IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 10, 2001 Session

## Holly Lynn Coleman Paul v. Thomas Frazier Paul

**Appeal from the Circuit Court for McMinn County**
**No. 23,484     John B. Hagler, Judge**

### FILED JUNE 18, 2001

### No. E2000-02161-COA-R3-CV

Holly Lynn Coleman Paul ("Wife") filed a complaint seeking a divorce from Thomas Frazier Paul ("Husband") on the basis of inappropriate marital conduct or, in the alternative, irreconcilable differences. Husband filed a counterclaim seeking a divorce on the ground of inappropriate marital conduct. The Trial Court granted Husband the divorce, divided the marital property which the parties could not divide by agreement prior to trial, awarded custody of the two minor children to Husband, and granted visitation to Wife. Wife appeals challenging the Trial Court's determinations on all of these issues. We affirm as modified.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Affirmed as Modified; Case Remanded.**


D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.


Selma Cash Paty, Chattanooga, Tennessee, for the Appellant Holly Lynn Coleman Paul.


Randy G. Rogers, Athens, Tennessee, for the Appellee Thomas Frazier Paul.

# OPINION

## Background

Wife filed a Complaint for Divorce on the basis of inappropriate marital conduct or, in the alternative, irreconcilable differences. Wife sought, among other things, joint custody of the parties' two minor children with primary physical custody being with Wife. Husband filed a counter-claim seeking a divorce alleging inappropriate marital conduct. Husband, however, sought exclusive custody of the children with Wife receiving appropriate visitation. Wife later amended her complaint to seek sole custody of the children. The children were six and four years old at the time of trial.

The Trial Court entered a temporary order granting joint custody of the children to Wife and Husband, but awarding Husband primary physical custody of the children pending resolution of the litigation. At that time, Husband lived in the parties' marital residence. Wife received visitation on alternate weekends.

At trial, Wife testified that Husband abused her physically and verbally over the course of their marriage. Wife claimed there were ten to fifteen incidents of physical abuse, one of which resulted in her having to go to the hospital for a sprain to her arm. According to Wife, she did not mention the physical and verbal abuse when the divorce was filed or during the hearing on temporary custody because she and Husband had previously agreed to an uncontested divorce and joint custody of the children with Wife having primary physical custody. Once it became apparent that Husband was not abiding by this alleged agreement, the allegations of physical abuse then surfaced.

Wife stated that approximately one week before she left the marital residence with the children, Husband told her he wanted a separation. The night she left, Wife became angry when she used the recall button on Husband's cellular phone to see whom he had called last and an answering machine with a woman's voice picked up. Wife later learned this was the phone number of one of Husband's co-workers. A few days after moving out, Wife asked Husband if he would vacate the marital residence and allow her and the children to return. Husband refused to leave the premises. Wife stated that she did not return to the marital residence because she was fearful of staying with Husband. Wife then lived with an aunt and uncle for approximately three months. At the time of trial, Wife had obtained her own three bedroom mobile home and lived next to her parents.

There was conflicting testimony over Wife's relationship with another man, Richard Reiter ("Reiter"). Reiter is the son of Wife's aunt by marriage with whom Wife resided for the three month period, and, therefore, is Wife's step-cousin. While living with her aunt and uncle, Wife went to North Carolina to visit Reiter. Wife claimed that Reiter recently had moved to North Carolina. Wife testified she was taking some of Reiter's personal belongings to him and was going to bring him back to Tennessee to get his vehicle. Husband trailed Wife to North Carolina. Wife eventually

spotted Husband and called the police who detained Husband long enough for Wife to get away. A gun was found in Husband's car. Wife admitted she told husband, prior to leaving for North Carolina, that she was going to the lake to spend the night with a friend. Wife testified that she actually was going to spend that weekend in North Carolina with Reiter. Reiter had rented a hotel room. Wife admitted she did not rent a separate room for herself, and it was her intent to spend the weekend in Reiter's hotel room. Wife denied that she intended to engage in any sexual relations with Reiter. After Husband was detained, Wife continued on her trip and was with Reiter in his hotel room for a few hours. She claims she stayed in the hotel room only long enough to regain her composure before returning to Tennessee.

Wife testified to another incident where Reiter attended her son's baseball practice. Husband knew Reiter was there. Husband waited for Reiter on Reliance Road and assaulted him. Husband was charged with assault in General Sessions Court. Wife later obtained an order of protection. Wife testified that Reiter would visit his mother, her aunt, from time to time while Wife was living with her aunt.

According to Wife, she was the one who tended to most of the children's needs. She attended the parent-teacher conferences, took care of them when they were sick, and took them to the doctor or dentist. She also cooked and cleaned and took care of the home. Wife stated that Husband, who worked the third shift, participated in very few of these or any extra-curricular activities with the children.

Wife works at Bowater Employees Federal Credit Union and also performs office work for her father approximately two days a week when not working at the credit union. Wife testified that Husband has to be at work at 6:00 a.m., and has to leave the house by 5:15 a.m. She assumed that once Husband received temporary custody of the children, he would either wake the children and take them to his mother's house before going to work, or they would spend the night at his mother's house. Wife claimed that her work hours were more flexible and the children would not have to wake up so early if they resided with her.

Wife, who was 24 years old at the time of trial, admitted that Husband was a capable father. She also admitted that while he had temporary custody of the children, they were healthy and clean. She admitted she has no reason to suspect that the children were not being cared for properly or that they would suffer any type of harm in Husband's care.

Husband was 25 years old at the time of trial. He works full-time at Magic Chef. Husband denied ever being physically or verbally abusive to Wife. When asked to describe what happened the time Wife went to the emergency room for her arm, Husband testified that he was wrestling around with Wife and their son and Wife fell off the bed and hurt her arm. He then took her to the emergency room.

After being awarded temporary custody of the children, Husband changed his work schedule and began working day shift. Husband testified that his mother comes to his house and

-3-

helps take care of the children, which also allows them to sleep later. There were a couple of days he did wake the children up early to take them to his mother's house, but this was because she was having her home remodeled and needed to be there when the remodeling was being done. Both Husband and his mother testified that she would remain available to assist with the children when needed. Husband has become more active in the school activities of the children. He has not had any problems taking care of the children and testified that the children are glad to be able to stay in the house to which they are accustomed.

Husband admitted following Wife to North Carolina. Husband testified that Wife told him that she was going to Watts Bar Lake for the weekend, but he could tell that she was not being truthful. He took the children to his sister and followed Wife. He followed Wife for several hours. After Wife spotted him, she pulled over. She told Husband to go home. He asked her who she was going to see, and she told him she was going to see Reiter. Husband claims he then asked Wife if she was going to "screw" Reiter, and she responded that she was. He continued to follow her. Husband eventually was pulled over by the police. The police found a gun in his car. Husband was detained until Wife left. The police officer made Husband lock the gun in the trunk of his car, and told him to go home, which he did.

Husband testified he tried to get Wife to go to counseling, and he was still desirous of working out the marriage. According to Husband, Wife refuses to try to work things out. Husband testified that Wife was and is a good mother to the children.

The Trial Court granted a divorce to Husband on the basis of inappropriate marital conduct, noting that Wife's grounds for seeking a divorce had not been proven by a preponderance of the evidence. The Court specifically found that Wife's conduct, which it deemed purposeful and intentional, was the basis for the demise of the marriage. After concluding that both Husband and Wife had been good parents, the Trial Court stated that after considering all of the factors, including Husband's willingness to continue his devotion to the children and the family unit, Husband should be the person to have and exercise the primary physical care and custody of the minor children. Wife was granted visitation with the children including every other weekend, alternating holidays, and one evening each week on those weeks she did not have the children for the weekend. Wife also was granted visitation for four weeks during the summer vacation and one week during the Christmas holiday.

The parties agreed on how to divide most of their personal property. As to real estate owned by the parties, the Trial Court found the gross value of the real estate to be $167,000.00, with mortgages in the amount of $119,000.00, for a net value of $48,000.00. The Trial Court awarded Wife $22,000.00 of the net value, and ordered Husband to pay this sum to Wife within 60 days. Wife also was awarded a one-half interest in Husband's retirement account. Wife was ordered to pay $225.00 per month in child support. After the parties separated and before trial, they divided the funds in their bank accounts equally with each one receiving $12,500.00. Wife used a portion of these funds as a down payment on a 1999 Ford Taurus. The vehicle was valued at $13,500.00, and the amount of money owed was $7,600.00. Husband's vehicle was valued at $15,000.00, with

a $12,500 lien. Each party was awarded their vehicle as well as the debt for the lien. Husband was ordered to maintain health insurance coverage on the children, with each party being responsible for one-half of all medical bills not covered by insurance. The Trial Court ordered each party to pay his or her own attorney's fees.

### Discussion

On appeal, Wife challenges the award of sole custody to Husband, the amount of visitation she was granted, the division of the marital assets, and the granting of the divorce to Husband.

Both parties claimed they were entitled to a divorce and set forth their respective proof in support of their positions. The issue of which party was entitled to a divorce was based almost exclusively on witness credibility. The Trial Court had the opportunity to observe both Wife and Husband, as well as their manner and demeanor. The Trial Court's factual determination involving witness credibility will be given great weight on appeal. *See Barnhill v. Barhnill*, 826 S.W.2d 443, 448 (Tenn. Ct. App. 1991)(citing *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959)). As recently noted by this Court in *Rice v. Rice*, 983 S.W.2d 680, 682 (Tenn. Ct. App. 1998):

> [O]n an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary.

Upon reviewing the entire record in this case, we cannot say that the evidence preponderates against the Trial Court's findings. Given these findings by the Trial Court, we find no error in the Trial Court's granting the divorce to Husband.

With regard to the division of marital assets, Wife's main challenge to the award is two-fold. First, she challenges Husband's receiving a greater share of the equity in the real property. Second, Wife claims that the property was not divided "equally" because the value of the vehicle she purchased was counted as an asset for her. Husband's share of the money split between the parties prior to trial was not counted as an asset to Husband. According to Wife, when considering the division of the real property as well as a few other assets awarded to Husband, and backing out the value of Wife's vehicle from the award, she was awarded approximately $11,600.00 less than Husband. Wife asserts that the division of marital assets should be modified and she should be awarded an additional $5,800.00 to make the division "equal".[1]

---

[1] This Court has not been provided sufficient information to determine if Wife received a greater value of the property which the parties agreed how to divide prior to the trial. Any disparity in the relative percentages of the estate awarded to Wife would be lessened when considering the entire value of the estate, as opposed to just those items challenged on appeal.

The many factors to be considered by a trial court in making an "equitable" distribution of property are set forth in Tenn. Code Ann. § 36-4-121(c), and include age, physical and mental health, employability, the contribution of a party to the marriage as homemaker, etc. Wife testified that she was physically and mentally healthy, she was young enough to get started on a new life, and felt she could "carry the load".[2]

As noted by this Court in *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). The property distribution of the trial court will be given great weight on appeal, and will be presumed correct unless the preponderance of the evidence is otherwise. *Id.* at 449-50. In our opinion, the Trial Court equitably divided the marital property, even if each particular asset was not divided exactly on a 50/50 basis or the overall distribution was not 50/50. It is not the role of this Court to fine-tune an overall equitable property division crafted by a trial court. We find no error by the Trial Court in its equitable division of the marital property.

Wife's main argument on appeal is the Trial Court's award of sole custody of the two minor children to Husband. We are guided in our review of this issue by this Court's holding in *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993), wherein we stated:

> Trial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion. *Mimms v. Mimms*, 780 S.W.2d 739 (Tenn. App. 1989). In custody cases, the welfare and best interests of a child are of paramount concern. A determination of a child's best interests must turn on the particular facts of each case. *Scarbrough v. Scarbrough*, 752 S.W.2d 94 (Tenn.

---

[2] It is for these reasons as well that Wife did not seek any alimony.

App. 1988). In *Bah v. Bah*, 668 S.W.2d 663 (Tenn. App. 1983) the court said:

> We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish*, 494 S.W.2d 145, 151 (Tenn. App. 1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:
>
> > Fitness for custodial responsibilities is *largely a comparative matter.* No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.
>
> *Edwards v. Edwards*, 501 S.W.2d 283, 290-91 (Tenn. App.1973) (emphasis supplied).

The factors to be considered by the court in child custody matters are set forth in Tenn. Code. Ann. § 36-6-106(a) and include, but are not limited to, the love, affection and emotional ties existing between the parents and child; the disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care; the degree to which a parent has been a primary caregiver; the importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; the stability of the family unit of the parents; the mental and physical health of the parents; and each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and other parent, consistent with the best interest of the child. In addition, T.C.A. § 36-6-101(d) provides that: "It is the legislative intent that the gender of the party seeking custody shall not give rise to a presumption of parental fitness or cause a presumption or constitute a factor in favor or against the award of custody to such party."

We believe that the record fully supports a conclusion that both Husband and Wife are fit parents. In this appeal, we must decide whether the Trial Court's factual determination that it was in the best interests of the children to award custody to Husband was against the

preponderance of the evidence. It is in this type situation, where both husband and wife are fit parents, that a trial court truly must exercise its discretion in determining the comparative fitness of the parents. The Trial Court did just that. We hold that the Trial Court's determination that of these two fit parents, Husband was more fit and, therefore, entitled to custody was not against the preponderance of the evidence.

While the record supports the Trial Court's conclusion that it is in the best interests of the children to award custody to Husband, we are of the opinion that it also is in the best interests of the children for Wife to be awarded more visitation with the children than as originally ordered by the Trial Court. We, therefore, remand this case to the Trial Court with instructions to modify its judgment by awarding Wife additional visitation to that originally ordered. Because Wife's visitation is to be increased, the Trial Court also should revisit the issue of child support to determine if the amount of child support awarded should be revised. In all other respects, the judgment of the Trial Court is affirmed.

## Conclusion

The judgment of the Trial Court is affirmed, as modified. This case is remanded to the Trial Court with instructions to modify its judgment to grant Wife additional visitation to that originally ordered by the Trial Court, and for further proceedings as necessary, if any, consistent with this Opinion. Costs of this appeal are taxed one-half to Holly Lynn Coleman Paul and her surety, and one-half to Thomas Frazier Paul.

_____
D. MICHAEL SWINEY, JUDGE