**William Eugene EDWARDS, Plaintiff-Appellee,**

v.

**Ruby Louise Hulsey EDWARDS, Defendant-Appellant.**

Court of Appeals of Tennessee, Middle Section.

July 27, 1973.

Certiorari Denied by Supreme Court Nov. 19, 1973.

Lance B. Bracy, Springfield, for plaintiff-appellee.

Joe P. Binkley, Jr., Nashville, for defendant-appellant.

## OPINION

TODD, Judge.

The defendant, Ruby Louise Hulsey Edwards, has appealed from a decree award-

ing a divorce to her husband, the plaintiff, William Eugene Edwards, granting to said husband the care, custody and control of the three minor children of the parties, divesting out of the defendant and vesting in the plaintiff all of the joint property of the parties.

On October 11, 1972, plaintiff filed his petition for divorce, charging adultery and cruel and inhuman treatment.

On October 13, 1972, defendant filed an original petition for divorce charging cruel and inhuman treatment.

On October 28, 1972, defendant filed her answer to plaintiff's petition requesting that her original petition, supra, be considered a counter complaint.

No answer was ever filed to the original petition of defendant.

The final decree, entered on January 2, 1973, reflects that the cause was heard on December 28, 1972,—

". . . upon the original petition, the answer and cross-petition and answer thereto, the proof in open court, exhibits to the pleadings, argument of counsel, and the entire record in this cause, from all of which it appears to the satisfaction of the Court that the allegations contained in the original bill as to cruel and inhuman treatment have been sustained by the proof, that the allegations contained in the original bill as to adultery are not well taken and that the allegations in the cross-petition have not been sustained by the proof, and it further appearing that the original petitioner, William Eugene Edwards is, and the Defendant Ruby Edwards is not, the fit and proper person to have the care, custody and control of the minor children, Robin Renee Edwards, Phyllis Denise Edwards and Robert Allen Edwards."

Said decree granted an absolute divorce to William Eugene Edwards, together with custody of the three children with visita-tion rights to the mother on two Saturdays each month "at the home of her parents and provided she does not take the children to Pegram, Tennessee."

All interest of the wife in a 2.8 acre tract, household goods, auto, a truck, and a horse was divested out of her and vested in the plaintiff husband, subject to his assumption of mortgage indebtedness.

The first three assignments assert that there is no evidence to support the award of a divorce, or that the evidence preponderates against the award.

To a large degree, the evidence is uncontroverted.

The parties are a young couple with three young children, aged 3, 5, and 7. The parties resided in the community of Ridgetop, on a 2.8 acre tract given them by the father of plaintiff on which tract they had built a substantial home on which there is now a mortgage of $12,000.00. Plaintiff worked regularly at the Dupont plant in Old Hickory, and defendant worked at a garment factory in Greenbrier.

In the course of various activities related to horses, the parties became acquainted with a couple named Andy and Beth Greer, who resided at Pegram, Tennessee.

Plaintiff testified without direct contradiction that in July, 1971, he returned to his home and found Andy Greer leaving his home putting his clothes on; that, at this time, defendant stated that she loved Andy and he loved her, but promised that she would not see or talk to him again.

In August 1971, there was a severe altercation in the home, at which time defendant was slapped (according to plaintiff) or beaten (according to defendant), requiring the attention of a doctor. Plaintiff says the altercation resulted from defendant's request, "take me to Andy Greer." Defendant denies this, and insists that there was no cause for the beating ex-

cept that she had been at her parents' house and plaintiff had been taking pills which caused him to act strangely.

Subsequently, plaintiff asserts, and defendant denies that defendant admitted to regular and repeated telephone conversations with Andy Greer.

The immediate, precipitating causes of this suit occurred on October 4, 1972. Defendant testified that, a few days before October 4, Andy Greer telephoned her at her work and she agreed to meet him "to talk"; that, on October 4, 1972, she reported to work at 7:00 a. m., but shortly after 8:00 a. m. she complained of illness and was excused from work for the day; that she telephoned her sister and requested that she come and transport her to Rivergate Mall for shopping; that Andy Greer met them at Rivergate at about 9:00 a. m. and her sister agreed to return for her at 2:00 p. m.; that she (defendant) and Andy "drove around and talked" from 9:00 a. m. until 2:00 p. m. when they returned to Rivergate Mall where they found not only her sister, but also plaintiff and certain other members of the family; that, because of threatening words and gestures of plaintiff, she (defendant) and Andy Greer drove away; that they "drove around and talked" until about midnight when they went to the home of a mutual friend in Nashville where defendant was permitted to stay 2½ weeks; and that she did not return to her home during said period because she was "scared."

The testimony of plaintiff and other participants in this episode of October 4, 1972, simply affirms, from their various points of view, the foregoing details given by defendant.

On said date, the three children were taken to the home of the parents of plaintiff where they have remained, except for visitation permitted by the Trial Court.

In the Trial Court, and in this Court, defendant has insisted that the July, 1971, incident involving Andy Greer at the home of the parties should not be considered because of intervening cohabitation and the plea of condonation. Such plea is effective as to the charge of adultery, but said incident forms an integral part of the background of subsequent events which are alleged to constitute cruel and inhuman treatment.

Defendant insists:

". . . it would appear that the only incriminating evidence presented by the appellee is his statement that his wife had stated to him that she was in love with a certain Andy Greer, and that on one occasion, with no provocation or reason whatsoever, she stated that she wanted to go down to Mr. Greer's home, all of which was totally and completely unbelievable, particularly in view of the many discrepancies in appellee's testimony. The only other incriminating evidence presented at the trial of this cause, was the appellee's testimony that he saw his wife in the truck of a certain Andy Greer at a shopping center in the middle of the afternoon in Davidson County, Tennessee, none of which could possibly constitute any legal grounds for divorce on the basis of cruel and inhuman treatment."

It is probably true that a wife's unexplained presence in a vehicle with another man on a single occasion would not be grounds for divorce. However, accepting as true all of the testimony of plaintiff, that man was the same man who had been seen leaving plaintiff's home putting on his clothes, whom defendant had promised never to see or talk to again, and with whom defendant admitted regular telephone conversations. Additionally, under plaintiff's version of the facts, the prolonged absence from home, following the October 4, 1972 incident, was not justified by any wrongful acts on his part and produced severe and sustained anxiety on the part of plaintiff and the children.

This is not among the strongest cases for divorce but, this Court cannot say that

the facts alleged and proven do not constitute grounds for divorce or that the evidence preponderates against the conclusions of fact reached by the Trial Judge.

It is true that defendant offered impressive evidence of abusive treatment of her by the plaintiff. Some, he admitted in part, but this he attempted to justify or excuse by the conduct of defendant which she denied. These charges and countercharges produce issues of fact which the Trial Judge resolved in favor of the plaintiff. This Court can hardly reverse the findings on this record.

Where a divorce case is tried without a jury, the appeal is heard de novo upon the record, accompanied by a presumption of the correctness of the decree unless the evidence preponderates otherwise. T.C.A. 27–303; Ellis v. Ellis, Tenn. App., 472 S.W.2d 741 (1971); Abney v. Abney, 61 Tenn.App. 531, 456 S.W.2d 364 (1970).

Where a divorce case is tried upon oral testimony and issues of fact depend largely upon the comparative credibility of the parties, the findings of the Trial Judge are entitled to great weight on appeal and are not to be lightly overturned. Clardy v. Clardy, 23 Tenn.App. 608, 136 S.W.2d 526 (1940); Matthews v. Matthews, 24 Tenn. App. 580, 148 S.W.2d 3 (1941).

The first three assignments of error are respectfully overruled.

The fourth assignment of error complains that the testimony of plaintiff was not sufficiently corroborated.

Defendant cites Greene v. Greene, 43 Tenn.App. 411, 309 S.W.2d 403 (1957), wherein this Court said:

"While the complainant testified that his wife deserted him Dec. 15, 1949, and that shortly after his admission to the hospital in Milwaukee, January 8, 1950, the defendant told him she was afraid to come near him or let their child see him for fear of contracting the disease of tuberculosis, and that she told him at that time that he was to 'go his way', and that she and their child would never live with him again; nevertheless, other testimony by him shows that she did visit him at least three times while he was in the hospital at Milwaukee, between January 8, 1950 and May 22, 1950. Furthermore, taking complainant's testimony in the light most favorable to him, it still remains uncorroborated except to a very slight extent by the testimony of his cousin, Mrs. Leach, and by that of his daughter, Patricia. In that aspect of the case, we think the situation is controlled by the decision of the Supreme Court in Fulford v. Fulford, 156 Tenn. 640, 4 S. W.2d 350, which holds that a divorce should not be granted in the absence of corroborating testimony, where it is reasonably practical to obtain such corroborating testimony." 43 Tenn.App., p. 434, 309 S.W.2d p. 413.

In Fulford v. Fulford, cited supra, the Supreme Court said:

"(1) She testified to facts tending to show abandonment and refusal or neglect to provide as charged. Her testimony as to abandonment was not, however, corroborated by any evidence, circumstantial or direct, on the hearing below. Publication was made for the defendant and a *pro confesso* taken against him. Both the chancellor and the Court of Appeals were of opinion that a divorce should not be granted under the circumstances appearing upon the uncorroborated testimony of the complainant. The propriety of this conclusion is the only question raised upon the petition for *certiorari*.

Upon consideration of the matter, we are of opinion that the conclusion reached was correct. Such is the weight of authority. In many jurisdictions there is a statute so declaring the law. Where there is no statute, the courts generally adhere to this rule.

It is thought that a different practice would encourage collusion.

.   .   .   .   .   .

"(2) We do not intend to lay it down as an inflexible rule that under no circumstances shall a divorce be granted upon the uncorroborated testimony of one of the parties. A case may arise in which it would be impossible to procure corroboration, circumstantial or otherwise. In the case before us, however, the parties seem to have lived in a boarding house at New Orleans, and it does not appear that it would have been a matter of any great difficulty for the complainant to have procured evidence corroborating her own at least as to part of the essential particulars. We think this is a case for the application of the general rule." 156 Tenn., pp. 641, 642, 4 S.W.2d pp. 350, 351.

█ In the present case, it can hardly be said that the testimony of plaintiff is without corroboration. Indeed, the defendant, herself, produced the most impressive evidence when she testified that she had promised never to see or talk to Andy Greer again but that she received a telephone call from him at work, lied to her superior and her sister, met Greer by prearrangement, and spent 13 hours (7:00 to 2:00 and 2:00 to 12:00) riding around with him in a truck "just talking." Other aspects of plaintiff's case were corroborated by various members of the family who testified.

The rule of Fulford v. Fulford and Greene v. Greene does not require direct corroboration of every detail of the theory or insistence of the plaintiff, but evidence of facts and circumstances reasonably tending to indicate the truthfulness of the testimony being supported.

Corroborating evidence is evidence complementary to that already given and tending to strengthen or confirm it; additional evidence of a different character on the same point. Black's Law Dictionary, Fourth Edition, p. 414.

In 27A C.J.S. Divorce § 136, pp. 454 et seq. is found the following text:

"It is settled that complainant's testimony is not required to be corroborated in every particular, but it is enough if corroborated as to material and controlling facts, or if the corroboration lends substantial support to complainant's testimony as to the controlling facts, or if the corroborating evidence tends in some degree to confirm the allegations relied on for a divorce.  .  .  .

.   .   .   .   .   .

"The sufficiency of corroboration should be determined in the light of the purpose of the requirement for corroboration, which is the prevention of collusion, and in the absence of collusion or danger thereof, as in genuinely contested cases, the rule requiring corroboration is relaxed, and slight corroborative evidence may suffice. On the other hand, where the circumstances show a possibility of collusion, the degree of corroboration required rises proportionately.

.   .   .   .   .   .

"The testimony of plaintiff may also usually be corroborated by that of defendant, in the absence of collusion, or by testimony as to admissions made by defendant, . . . " C.J.S. 27A, pp. 455, 456, 458, 459.

The testimony of the plaintiff in this case was sufficiently corroborated.

The fourth assignment of error is respectfully overruled.

█ The fifth assignment of error insists that the failure of plaintiff to answer the counter-complaint of defendant amounted to an admission of all facts alleged in the counter-complaint and that this precluded a finding in favor of plaintiff. There is no elaboration or citation of authority to support this insistence.

Rule 8.04, Rules of Civil Procedure, provides that, with certain inapplicable exceptions,

"averments in a pleading to which a responsive pleading is required are admitted when not denied in the responsive pleading."

This rule is not interpreted to mean that a party is privileged to go to trial without calling to the attention of the Trial Court the complete absence of a necessary pleading.

Formerly, default in pleading was called to the attention of the Trial Court by motion for default or motion for pro confesso.

Rule 55.01, Rules of Civil Procedure, provides that:

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise. defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered as follows:

The party entitled to a judgment by default, shall apply to the court therefor;

. . .

It would appear, therefore, that complete omission to answer must be taken advantage of by suitable application for default judgment, otherwise it is waived by proceeding to trial as if the pleadings were at issue. See Cherry v. Smith, 57 Tenn. (10 Heisk.) 389, (1873); Teasdale & Co. v. Manchester Produce Co., 104 Tenn. 267, 56 S.W. 853 (1900). A partial failure to answer fully, as by omitting answer to particular allegation, should be timely called to the attention of the Trial Court with request that the alleged fact be considered as admitted.

Failure to answer should not be considered a substitute for evidence when first invoked on appeal.

The fifth assignment of error is respectfully overruled.

The sixth, seventh and eighth assignments of error complain of the award of custody of the three minor children to the father.

Appellant insists that the evidence preponderates against the finding of the Trial Judge that appellant (the mother) is not a fit custodian of the children. Appellant states:

"It would appear that the only evidence whatsoever presented before this Court with respect to the appellant being an unfit mother to have custody and control of the parties' three minor children, who are children of extreme tender years, ages 6, 5 and 3, the two oldest being girls and the youngest being a boy, are several vague and general statements that appellant did not take proper care of the minor children, more specifically that she took the children to various different baby-sitters; that she fed the children baloney with no bread for lunch, and that she allowed her youngest child to walk around on occasion with wet diapers."

The foregoing does fairly summarize the evidence against the fitness of appellant, except for the action of appellant in deserting her home and children for a period of one week before the filing of the first action herein and for some time thereafter; and the further fact that appellant now works, lives in a mobile home in a remote community and offers to procure a baby sitter while she works. To commit the children to appellant would require transfer of one child from the county school system of Robertson County to that of Cheatham County and would remove all of the children from the environment in which they have thus far lived.

Fitness for custodial responsibilities is largely a comparative matter. No human being is deemed perfect, hence

no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others. In this context, the Trial Judge concluded, and this Court concurs, that the father, through the facilities of his parents' home a short distance from the former home of the parties, was a *more fit* custodian and the mother was a *less fit* custodian by comparison.

Neither the Trial Court, nor this Court, is in position to say that appellant would not be a fit custodian if no better facilities were available.

The present case presents the classic situation of grandparents able and willing to take the children and their father into an adequate home where the children are shown to be receiving loving care. Appellant is not able to offer any mode of care remotely approaching the excellence of that offered by the father through his parents.

What has already been said is sufficient response to the insistence of appellant that the disposition of the children is not for their best interest and welfare.

Appellant insists that she was improperly deprived of custody of her children as punishment for her conduct. It is correct that the placement of custody should not be used solely to punish a parent for misconduct; however, misconduct does frequently reflect upon relative fitness or unfitness for custody; and, to this degree and for this purpose, misconduct of parents may properly be considered in the determination of custody.

As previously stated, other, more compelling reasons exist for placing the children in the home of the paternal grandparents.

The sixth, seventh, and eighth assignments of error are respectfully overruled.

The ninth assignment of error complains of the refusal of the Trial Court to allow the mother "any extended period of overnight visitation with her children."

As has been repeatedly stated, the details of custody of and visitation with children are peculiarly within the broad discretion of the Trial Judge whose decisions are rarely disturbed. In the present case, it does superficially appear rather severe to limit a young mother's visits to one day in each fortnight and to deny her the privilege of taking the children to her home, or overnight.

The record, however, explains this apparent severity. In the first place, it was shown that appellant had not fully utilized the visitation privileges granted her. Excuses are advanced for such failures, but they nevertheless reflect upon the intensity of the desire of appellant to see her children. Secondly, appellant's decision to change her employment from Greenbrier to Nashville and her residence from Ridgetop to Pegram is a substantial consideration in considering visitation. Appellant insists that Andy Greer lives many miles from her, even though his post office is also Pegram. She admits, however, that the sister of Andy Greer lives nearby in Pegram.

It would seem that a mother interested in having custody or extended visitation rights would have selected a place of residence having less of a shadow of suspicion over it.

This Court cannot say that the Trial Judge unreasonably limited visitation of appellant; however, this is based upon the reasonable expectation that the Trial Judge will be receptive to further applications of appellant based upon improved utilization of existing privileges and improved facilities for wholesome care of the children during visitation.

The ninth, and last, assignment of error is respectfully overruled.

Although not assigned as error, the disposition of the joint property of the parties has caused this Court some con-

cern. Such a disposition could not be justified upon basis of misconduct of appellant. Humphreys v. Humphreys, 39 Tenn. App. 99, 281 S.W.2d 270 (1954). The record would not support the complete divestiture of appellant's interest on grounds of contribution of cost. The only other justification for this part of the decree would be the obligation to support children which is equal and joint. Section 34–101, T.C.A.

The final decree will therefore be modified to provide that the complete divestiture of appellant's interest in joint property is based upon the placing of primary burden of support of the children upon the father by the order of custody, and that in any future proceedings between the parties in reference to child support, the division of property in said decree will be a proper matter for consideration.

The final decree will also be modified to provide that the custody of the father is conditioned upon the children remaining in his parents' home and that any change in their place of residence apart from his parents must have prior approval of the Court.

As modified, the decree of the Trial Court is affirmed. Appellant will pay the costs of this appeal.

*Modified and Affirmed and Remanded.*

SHRIVER, P. J., and PURYEAR, J., concur.