IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 22, 2002 Session

## KIMBERLY G. LEWIS (HARMON) v. TIMOTHY E. LEWIS

**Appeal from the Circuit Court for Johnson County**
**No. 1862     G. Richard Johnson, Judge**

**FILED DECEMBER 10, 2002**

**No. E2002-00209-COA-R3-CV**

———————————————

In this divorce case, Timothy E. Lewis ("Husband") appeals the Trial Court's decision, arguing that it erred in classifying certain assets as marital rather than his separate property. Husband asserts that "the failure of the Trial Court to properly characterize separate property versus marital property [resulted in] an inequitable division of the parties' assets." We find that several of the assets classified by the Trial Court as marital property should have been classified as Husband's separate property. We also find that a portion of the Husband's credit card debt, which was incurred during the marriage, should be assigned to Kimberly G. Harmon ("Wife").[1] We affirm the Trial Court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Modified in Part; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

David W. Blankenship, Kingsport, for the Appellant, Timothy E. Lewis

Jeffrey P. Miles, Johnson City, for the Appellee, Kimberly G. Harmon

### OPINION

The parties were married on November 6, 1992. One child was born to their marriage on September 9, 1997. Wife filed this action for divorce on May 3, 1999. On December 14, 1999 the Trial Court granted each party a divorce from the other and reserved the issues of child custody and support and division of marital property. On February 23, 2000, the Court entered a final order setting child custody, support and visitation. A trial was conducted on May 8 and 9, 2001 on the

---

[1]At the time of the divorce, Wife's name was Kimberly G. Lewis. She has since remarried and her name is now Kimberly G. Harmon.

issues of classification and division of the parties' property and debts, and the Trial Court entered a final order and memorandum opinion resolving these issues on June 12, 2001.

Husband appeals, raising the following issues as quoted from his brief:

> 1. Did the Trial Court err in its characterization of property as between the divorcing parties and thus err in the distribution of the property to the respective parties?
>
> 2. Did the Court abuse its discretion in ruling on issues of distribution of marital property, characterization of property and in distribution of marital debt?

These issues cause us to focus on the provisions of T.C.A. 36-4-121, which provide in relevant part as follows:

> (a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.
>
> \*　　　　\*　　　　\*
>
> (b) For purposes of this chapter:
>
> (1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . .All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.
>
> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage.

       *            *           *

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

       *            *           *

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

       *            *           *

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

In order to divide the property of divorcing parties in accordance with this statute, the trial court is required to first classify the parties' property as either separate or marital, and then it must divide the marital property in an equitable manner. Dividing a marital estate "is not a mechanical

process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c)." *Kinard v. Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998). As this Court noted in *Kinard*,

> Trial judges have wide latitude in fashioning an equitable division of marital property, *see Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn.1983); *Brown v. Brown*, 913 S.W.2d at 168, and appellate courts accord great weight to a trial judge's division of marital property. *See Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn.Ct.App.1996); *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn.Ct.App.1973). Thus, we will ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn.Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *See Brown v. Brown*, 913 S.W.2d at 168; *Mahaffey v. Mahaffey*, 775 S.W.2d 618, 622 (Tenn.Ct.App.1989); *Hardin v. Hardin*, 689 S.W.2d 152, 154 (Tenn.Ct.App.1983).

*Kinard*, 986 S.W.2d 220 at 230-31.

The Husband argues on appeal that the Trial Court incorrectly classified certain assets as marital instead of as his separate property. He asserts this argument regarding a certain parcel of real estate referred to in the record as the Lewis-Oliver property. The Lewis-Oliver property consists of approximately 15 acres purchased before the marriage by Husband and his partners, a Mr. and Mrs. Oliver. The Trial Court found as follows regarding the Lewis-Oliver property:

> The [Husband] owns a one-half (½) interest, and the Olivers own a one-half (½) interest. The [Husband] and the Olivers developed the tract into a residential subdivision and improved it with division into lots, leveling of lots, paving of roads, guttering the roads, etc. . .The [Husband] and his partners sold, or have for sale, all lots in the tract, except two (2) lots. The [Husband] took Lot No. 10 in his name (after marriage) and his partners chose a lot. The [Wife and Husband] intended to build their dream home on Lot 10. [They] had floor plans and elevations drawn for their "dream house design" to be built on Lot 10.
>
> Lot 10 is marital property. The [Husband] took title to Lot 10 during the marriage. The Court finds that improvements to the lots were made during the marriage. Although the [Husband] and his partners purchased the tract before the parties' marriage, the [Wife] made substantial contributions, including that of homemaker, parent, and wage earner. The [Wife] made further contributions by increasing the earning power of the [Husband] by paying the vast majority of all living and household expenses of the parties and their child.

The evidence does not preponderate against the Trial Court's conclusion that Lot 10 of the Lewis-Oliver property is marital property. This conclusion is supported by the Court's finding that Husband took title to Lot 10 during the marriage, and that the parties intended to build a new marital residence on the property. The Court placed a value of $15,000.00 on Lot 10, awarded it to the Husband, and ordered him to pay Wife $7,500.00 for her interest in the lot.

The Trial Court did not classify the other lots of the Lewis-Oliver property. We find that the other lots are Husband's separate property. We also find that the record fully supports the Court's conclusion that Wife made substantial and material contributions to the preservation and appreciation of the Lewis-Oliver property during the marriage. The Trial Court awarded the other lots to the Husband. The Court did not place a specific value on the other lots of the Lewis-Oliver property. The evidence presented to the Court supports a finding that the value of his interest in the property is $30,000.00.

The next piece of property at issue is a rental property referred to as the Shady Street property. The Court found as follows regarding the Shady Street property:

> This property was owned by the [Husband] pre-marriage to [Wife]. The property apparently consists of four (4) small rental offices on the top floor and a small apartment on the bottom floor. The [Wife] insists she has a marital interest in the property because she helped the [Husband] with the remodeling: tiled floors, mopped, swept, cleaned litter and debris, and helped tear down an old building on the property.
>
> \*    \*    \*
>
> In addition to the [Wife's] work on this property as aforesaid, she made a contribution as a wage-earner, parent, homemaker, and payment of most of the parties' and their child's living and household expenses. This is marital property. The value of this property on the date of the parties' divorce was about $40,000.00. The marital value is $40,000.00. This property is awarded to the [Husband].

In light of the Court's finding that he owned it before the marriage, we agree with Husband that it should have classified the Shady Street property as his separate property. The record supports a finding that its appreciation in value during the marriage was marital property. In any event, as noted above, the Court awarded the entire value of the property to the Husband, and we do not find it erred in this disposition.

Husband owns a business called Lewis Construction Company ("LCC"). He argues on appeal that the Court should have classified all the assets of LCC as his separate property. These assets include a real estate parcel of approximately five acres, a large metal building with high-top garage doors for large vehicles, a single wide mobile home, a small wooden storage building, and various pieces of construction equipment.

At trial, the parties stipulated that the pre-marriage value of the land was $12,000.00, that the value of the land and the improvements made after the marriage is $39,488.00, and that the value of the mobile home is $6,000.00. They also stipulated that the mobile home was marital property. The Trial Court found as follows:

> [Wife] insists that a portion of the [Husband's] business is marital property. It appears that marital funds were used to purchase the mobile home located on the property. . .[Wife] testified that she did some of the businesses' book-work; drove the [Husband] to job sites at night and shined the lights of the vehicle so the [Husband] could move equipment; and she recalled one instance when she drove a dump-truck for ten (10) hours a day for four (4) days. The [Husband] admitted that the [Wife] ". . .contributed some. . ." to the business by helping with the book-work, "occasionally" operating a dump-truck and "sometimes" driving the [Husband] to job site so he could drive equipment back to the business property.
>
> The [Wife] made a substantial contribution to the business by her work as aforesaid, in addition to her contribution as a homemaker, parent, wage-earner, and payment of practically all of the parties' and their child's household and living expenses. The Court finds that Lewis Construction Company is a marital asset.

Because Husband owned the real estate on which LCC operated prior to the marriage, we agree with his argument that the Court should have classified the premarital value of the land as his separate property. The parties stipulated that this value was $12,000.00. Although the fact that the Wife made substantial contributions to the preservation and appreciation of LCC means that the appreciation in LCC's value during the marriage is marital property under T.C.A. 36-4-121(b)(1)(B), it does not serve to convert Husband's separate property into marital property.

The Court found that the value of the construction equipment purchased during the marriage was $100,100.00. Because this equipment was "acquired by either or both spouses during the course of the marriage," T.C.A. 36-4-121(b)(1)(A), the Court correctly classified it as marital property. The Trial Court found and held that the net value of LCC's assets was $145,488.00. The Court awarded the assets of LCC to Husband and found that Wife's marital interest in the business was $13,000.00, which he ordered Husband to pay to Wife within sixty days. We find no error in the Court's disposition of LCC's assets.

At the time of the divorce, Husband had a credit card debt of approximately $106,000.00. The Trial Court found that Husband should be solely responsible for its payment, and he argues that the Court should have split the debt equally between the parties. The Court found as follows regarding Husband's credit card debt:

This debt has been incurred by the [Husband] for about everything he has purchased in his business, as well as personal expenditures that did not benefit the [Wife]. The [Husband] used his credit cards for the parties' honeymoon, to take the family out to eat, to pay his child support, to make the $23,000 down-payment on the parties' home, to purchase and improve realty (Lewis/Green property and [Shady Street] office/apartment building), to make purchases for Lewis Construction, including large purchases for equipment, and the cost of improving the realty, to "live on" while the parties were separated, as well as other personal purchases. Very little or none of this debt was incurred on behalf of the [Wife] or the parties' child.

Courts must divide the parties' marital debts in an equitable fashion. *Kinard*, 986 S.W.2d 220 (Tenn. Ct. App. 1998). Marital debts are "those debts incurred during the marriage for the joint benefit of the parties. . .or those directly traceable to the acquisition of marital property." *Mondelli v. Howard*, 780 S.W.2d 769 (Tenn. Ct. App. 1989)(internal citation omitted). In equitably distributing the marital debts, courts should consider (1) which party incurred the debt, (2) the purpose of the debt, (3) which party benefitted from incurring the debt, and (4) which party is better able to repay the debt. *Mondelli,* 780 S.W.2d at 773; *Smith v. Smith*, an unreported opinion of this Court filed in Nashville on August 28, 2002. Courts should also consider the factors found at T.C.A. 36-4-121(c) in making this determination. *Kinard*, 986 S.W.2d 220.

Husband testified that his credit card debt before the marriage was approximately $3,230.00. The remainder of the credit card debt was incurred during the marriage, and the evidence shows that most of it is traceable to the acquisition of marital property. In light of the Trial Court's finding that $23,000.00 of this debt was used to make a down payment on the marital residence, and that a portion of it was incurred in spending "for the parties' honeymoon, [and] to take the family out to eat," which finding is supported by the record, we find that the evidence preponderates against the Court's finding that "very little or none of this debt was incurred on behalf of the [Wife] or the parties' child."

This Court has noted on prior occasions that "[m]arital debts should, where possible, follow their associated assets," *King v. King*, 986 S.W.2d 216 (Tenn. Ct. App. 1998), and that "[m]arital debts need not be divided in precisely the same manner as the marital assets, although they frequently follow their related assets," *Kinard*, 986 S.W.2d at 233. It is apparent from a review of the evidence presented that the majority of the credit card debt was incurred for the purchase of construction equipment for Husband's business use. It therefore follows that the Husband, who was awarded the assets of his construction business, should be responsible for the majority of the debt. We find, however, that under the facts of this case, equity requires that the Wife be responsible for a portion of the marital debt.

The Trial Court awarded the marital residence to the Wife. We find that she should be responsible for half of the down payment on the marital residence, an amount of $11,500.00. The

-7-

Trial Court also awarded Wife $13,000.00 as her interest in LCC, which amounts to 8.9 percent of the total value of LCC as determined by the Court. Although there is no requirement that marital debts and assets be allocated to the parties in directly proportional amounts, *see Mondelli v. Howard*, 780 S.W.2d 769 (Tenn. Ct. App. 1989), under the specific circumstances of this case, we find it equitable for the Wife to be responsible for a similar proportion of the marital debt, an amount of $8,123.00.[2]

The Trial Court found as follows regarding certain personal loans from the Wife to the Husband:

> During the course of the marriage, the [Husband] "constantly" asked the [Wife] for a personal "loan" or a "loan" for his business. The [Wife] loaned the money to the [Husband] by check, credit card, and "cash" ten (10) to fifteen (15) times, according to the [Husband's] testimony.
>
> Exhibit 1 indicates that the [Wife] "loaned" the [Husband] $11,650.00 from her personal credit card, plus loans evidenced by checks totaling $520.00. . .and the sum of the cash loans is unknown. The [Husband] testified that on September 17, 1992 (before the parties' marriage) he borrowed $15,862.50, at nine percent (9%) interest per annum, from the [Wife] and on which he made one principal and interest payment. . .leaving a balance of $15,000.00. The [Husband] further testified that the [Wife] never demanded the payment of this balance during their marriage and that she forgave him the debt. The [Wife] denies forgiveness of this debt.
>
> The Court finds that the [Wife] loaned the [Husband] $11,650.00 during the marriage for the [Husband's] business or personal use. The [Wife] did not share in the use of these funds. The [Husband] shall pay the [Wife] $11,650.00 within sixty (60) days of the entry of this Memorandum Opinion and Final Decree. . .
>
> The Court finds that the $15,000.00 debt is a personal obligation of the [Husband] to the [Wife], as the same was incurred pre-marriage and was used by the [Husband] for him personally, or his business. The [Wife] did not share in the use of these funds. The loan was in the nature of a demand repayment and the [Wife] made the demand per her Rule 9 Statement. . .Pursuant to the [Husband's] testimony, the principal sum due is $15,000.00, with a simple nine percent (9%) per annum interest from January 1, 1993 to June 1, 2001, which equals $10,125.00 in interest. The [Husband] shall pay

---

[2]We arrive at this figure based on the following calculation: $102,770 (marital debt on Husband's credit card) less $11,500 (one-half down payment on marital residence) equals $91,270, multiplied by 8.9%, yields an amount of $8,123.03.

the [Wife] the balance of this loan, the sum of $25,125.00, within sixty (60) days of the entry of this decree.

On appeal, the Husband argues that the personal loan from Wife made before the marriage "was a gift consummated during the marriage and there should be no repayment obligation." The question of whether the Wife "forgave" the loan or treated it as a gift is factually-driven, and on this issue, as with most factual issues in this case, the parties' testimony differs sharply. The Trial Court made a specific finding that the Husband "has poor credibility." Regarding the "loans" made during the course of the marriage, we believe the Trial Court approached this issue in the context of attempting to make an equitable division of the property, not in regard to the legal enforceability of a loan made between spouses during a marriage. We find no error in the Court's judgment and disposition regarding the loans from Wife to Husband.

The Husband takes issue with the following findings and ruling by the Trial Court regarding certain medical expenses incurred during the marriage:

> The [Wife] insists that about $8,000.00 in uninsured debt was incurred by the parties during the [Wife's] complicated and bed-ridden pregnancy and delivery of twin sons (one died). The [Wife] further insists that the [Husband] has never "paid a penny" on these debts and there was about a $2,600.00 balance due on these debts as of the date of the divorce. The [Husband] shall pay $2,600.00 to the [Wife] as his share of child-related medical expenses within sixty (60) days of the entry of this decree.

These findings and the Court's judgment in this regard are supported by the record and we find Husband's argument that they are erroneous to be without merit.

The Wife is employed as a medical technician, and she worked full-time in that capacity throughout the marriage. The Court found her gross monthly income to be $3,784.00. The Husband, as above noted, operates a construction and trucking business, in addition his involvement in real estate speculation. The Court found that "the [Husband's] true income is difficult to calculate." The Court further found as follows in this regard:

> The [Husband] is playing a numbers game with the Court. On these two Local Rule 9 Statements, the [Husband] swears that he is making monthly credit card payments that grossly exceed the income he reports on these sworn statements.
> The Court finds that the [Husband's] true gross monthly income is at least equal to the [Wife's] monthly gross income of $3,784.00. ....and when depreciation on the [Husband's] equipment and buildings are excluded, the [Husband's] monthly net income is more than the [Wife's] monthly net income.

At the time of divorce, which ended a seven-year marriage, the Husband was 43 years old and the Wife was 34 years old, and both parties were in good physical and mental health.

Regarding each spouse's contribution to the family and household during the marriage, the Trial Court found as follows:

> During the parties' marriage (before separation), the [Husband] admits that the [Wife] paid, from her income, practically all of the household and living expenses, i.e., food, clothing, day-care, ninety percent (90%) of the utilities, health insurance, her monthly vehicle payment, etc. Furthermore, the [Husband] admitted that the [Wife] cleaned the parties' residence but, the [Husband] testified, the [Wife] "did a substandard job," kept clean clothes for the family, did the grocery and other shopping chores, prepared the meals, performed all of the work in the yard of the parties' home, performed substantially all of the child-rearing, performed substantially all of the household chores, and was the family's "financial manager."

Taking into consideration all of the relevant statutory factors as discussed above, including the value of each party's separate property, we find that with the adjustments made as described in this opinion, the Trial Court's distribution of the marital debts and assets is an equitable one. Including the adjustments to the distribution of marital debt, and the reclassification of the assets as discussed above, the Wife's portion of the net marital estate will be $129,873.30 or 62.6%. The Husband's portion of the net marital estate will be $77,591.00, or 37.4%. Our review of the record and the relevant statutory authorities persuades us that this is an equitable result under the particular facts of this case.

In accordance with our determination that Wife should be responsible for a total of $19,623.00 of the Husband's credit card debt, on remand the Court should direct that this amount is to be offset against the amount owed by Husband to Wife under the terms of the Court's judgment.

For the foregoing reasons the judgment of the Trial Court is affirmed in part and modified in part and the cause remanded for proceedings not inconsistent with this opinion and for collection of costs below. Costs of appeal are adjudged against the Wife, Kimberly G. Harmon.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE