IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
MAY 17, 2004 Session

## KAREN B. GOLIGHTLY v. GARY KEVIN GOLIGHTLY

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-007604-01     Robert A. Lanier, Judge**

_____

**No. W2003-00870-COA-R3-CV - Filed September 14, 2004**

_____

This case involves a child custody dispute between the parents of two minor children. Following a bench trial, the trial court granted the parties an absolute divorce and designated the mother as the primary residential parent. In addition, the court below awarded the parties equal parenting time and provided for an alternating visitation schedule in the Permanent Parenting Plan. The mother subsequently filed a motion requesting the trial court to reconsider the custody arrangement, which the trial court denied. The mother filed this appeal contesting the determination of custody by the Circuit Court of Shelby County. For the reasons stated below, we affirm the decision of the circuit court.

**Tenn. R. App. P. 3.; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Craig B. Flood, Memphis, TN, for Appellant

Steven M. Markowitz, Memphis, TN, for Appellee

### OPINION

### Facts and Procedural History

Karen Golightly ("Mother") filed for an absolute divorce from Gary Golightly ("Father") on December 20, 2001. The parties have two minor children of the marriage; Isabella Golightly (DOB: 06/21/1996) and Phineas Golightly (DOB: 11/30/1998) (collectively the "Children"). On December 31, 2001, Father petitioned the trial court for temporary custody of the Children pending the outcome of the divorce proceedings. Mother filed a counter-petition on January 24, 2002, also seeking temporary custody.

Around July 2001, prior to the divorce complaint being filed, Mother and Father attended marriage counseling sessions with two licensed social workers.[1]  On February 1, 2002, the trial court heard argument on Father's motion to prevent these social workers from providing testimony related to statements made by Father during the counseling sessions.  Father asserted that communications with these social workers was privileged.  Based on our review of the record, it appears that the trial court granted Father's motion as to conversations solely between Father and the social workers. [2]

On April 19 and 26, 2002, the trial court heard proof presented by both parties regarding their respective fitness for custody of the Children.  During these hearings, the trial court heard controverted testimony from several witnesses, including Mother and Father, regarding each parent's respective fitness as a parent.  The focus of this appeal centers primarily around the testimony related to Father's mental stability.

At the hearing, Mother related how Father suffered from depression, and how she became concerned for the Children's welfare because Father was suicidal.[3]  The trial court permitted Mother to testify about Father's statements to one of the social workers concerning suicidal thoughts.  Mother also subpoenaed Father's medical records showing Father had been prescribed anti-depressant medication by his primary care physician.  Father denied being suicidal, and testified that any depression he suffered stemmed from learning of Mother's affair with another man in August 2001. On cross-examination, Father's counsel sought to show that in fact Mother was suicidal.[4]  The trial court also heard testimony from several other witnesses concerning Father's mental health. The parties offered additional testimony from relatives, co-workers, and acquaintances concerning their relative fitness as parents.

---

[1] The parties originally attended sessions with Ms. Ann Finch.  Later, the parties decided to attend sessions with another social worker, Ms. Karen Riss.

[2] The trial court instructed that an order be drawn up reflecting the court's ruling on the testimony of the social workers, however, upon reviewing the record we are unable to find any such order.

[3] Mother alleged that Father had previously made statements about jumping off the Mississippi River bridge.

[4] Mother testified that she authored a book in which she and the female character shared striking similarities. In the book the main character commits suicide by jumping from the Mississippi River bridge.  Mother also admitted that she made a statement to Father's brother about her jumping from the Mississippi River bridge.

On April 30, 2002, the court below issued a memorandum opinion in which the court found both parents to be fit, and that the then existing custody arrangement should be maintained.[5] In that opinion, the court below stated:

> During the marriage, the parties shared parenting responsibilities to a remarkable extent. Neither parent considers the other an unfit parent. It would be virtually impossible to say which parent provided more parenting to the child. Wife accuses husband of suffering depression, while husband points to wife's comparative rigidity and lack of cooperation, evidenced on one occasion by a threat to tell the police that her children had been kidnaped if the husband picked them up from school without her consent. These complaints do not obscure the fact that, as parents, both parties are loving and concerned caretakers of their children.

On August 5, 2002, the trial court issued an order regarding custody of the Children, adopting the findings from the April 30th memorandum opinion. Mother submitted a proposed Permanent Parenting Plan on August 26, 2002. On September 18, 2002, Mother filed a motion asking the trial court to reconsider the custody determination. On October 10, 2002, Mother filed another motion asking the trial court to modify the custody order, alleging a substantial change of material circumstances.

On November 12, 2002, the trial court conducted a hearing to resolve all outstanding issues related to the divorce. On November 14, 2002, the court entered a final divorce decree and parenting plan. In this final decree, the trial court referenced its April 30, 2002, memorandum opinion and noted that the parties were unable to reach an agreement on custody. In the decree, the court stated:

---

[5] The court's memorandum opinion adopted the custody arrangement the parties were operating under by agreement at the time, which worked as follows:

> Wife has permitted extensive contact between the husband and children and this has resulted in some friction and dissatisfaction by wife. Wife's current employment schedule is from 8:00 a.m. until 12:30 p.m. Mondays, Wednesdays and Fridays, and from 8:30 a.m. until 2:30 p.m. on Tuesdays and Thursdays. She is off on the weekends. She currently takes the children to school, while husband picks the children up at 12:30 p.m. on Tuesdays and Thursdays, takes them home and stays with them until wife gets home at approximately 3:00 p.m. On weekends, since January 2002, husband has been having the children on one night. During weekdays, wife has reluctantly allowed him to come from 6:30 p.m. to 9:30 p.m., Sunday through Thursdays. She is usually present, but leaves to avoid any conflict. The parties have no particular holiday arrangement but work cooperatively. On Wednesdays, the husband arrives at 8:30 p.m. because he performs volunteer work at St. Jude Hospital on that night. Mondays through Fridays, he arrives at 6:45 or 7:00 a.m. to assist with getting the children up and ready for school.

The father's desire is to share an equal part in the childrens' lives with the mother and the court sees no reason why that should not be done. For that reason, the parenting plan of even date with this decree provides for a substantially equal division of time between the two parents.

The Permanent Parenting Plan provided that Mother would be the primary residential parent, and that the parties would share substantially equal time with the Children.

Dissatisfied with this result, Mother filed a motion with the trial court asking the court to reconsider the custody arrangement and to provide additional findings of fact. On March 14, 2003, the trial court entered an order denying Mother's motion. Mother subsequently filed a timely notice of appeal to this Court on April 4, 2003, raising the following issue, as we perceive it, for our review: whether the trial court below erred by failing to properly compare the relative fitness of the parties when making a custody determination.[6] For the reasons set forth below, we affirm the trial court on this issue.

**Standard of Review**

This case was tried without a jury, therefore, our review of these issues is governed by Tennessee Rule of Appellate Procedure 13(d), which provides that "review of findings of fact by the trial court in civil actions shall be *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). The standard of review found in Rule 13(d) applies when this court undertakes a review of findings of fact in child custody cases. *Hass v. Knighton*, 676 S.W.2d 554, 554 (Tenn. 1984). We are mindful that in cases involving custody arrangements, "the details of custody of and visitation with children are peculiarly within the broad discretion of the Trial Judge whose decisions are rarely disturbed." *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973). "Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). "Where a divorce case is tried upon oral testimony and issues of fact depend largely upon the comparative credibility of the parties, the findings of the Trial Judge are entitled to great weight on appeal and are not to be lightly overturned." *Edwards*, 501 S.W.2d at 288 (citing *Clardy v. Clardy*, 136 S.W.2d 526, 529 (Tenn. Ct. App. 1939)).

---

[6] In her brief, Mother set forth two issues for our review. Both issues raised by Mother are essentially the same; asking this Court to find that the court below failed to properly compare the relative fitness of the parties when making a custody determination. Father's brief presented no issues for review, but merely provided that Mother's issues on appeal were without merit.

**Child Custody**

Mother asserts that the trial court should have awarded her primary parenting time, while Father should have received visitation every other weekend, one-half of the holidays, and one-half of each summer. In her brief, and during oral argument, Mother argued that "[t]he trial court failed to compare the fitness of the two parties and then decide which parent, under all the circumstances, was comparatively more suited to have custody/parenting time of the children." Mother argues that the court below failed to consider the statutory factors in section 36-6-106(a), specifically section 36-6-106(a)(5) which requires the court to consider the mental health of the parents. In support of her argument, Mother asserts that the trial court's final divorce decree makes no findings of fact, but merely states that "[t]he father's desire is to share an equal part in the childrens' lives with the mother and the court sees no reason why that should not be done."

Mother also argues that this Court should "presume that Mr. Golightly's mental health records would not reflect favorable [sic] on him since he was unwilling to allow the court to consider them." Mother argues that Father's assertion of privilege found in section 63-23-107 of the Tennessee Code, to prevent the social workers from disclosing communications made during therapy, constitutes additional evidence that the court below failed to consider Father's mental health when making its custody determination.[7]

The legislature has provided that the trial court must consider the following factors when making a custody determination:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
> (1) The love, affection and emotional ties existing between the parents and child;
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

---

[7] Mother does not contest the validity of the trial court's ruling on the privilege issue on appeal.

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15-402], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a) (2003). The trial court, in considering the above factors, must engage in a "comparative fitness" analysis of both parents. *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983). "The only rigid principle is and must be that the best interests of the child are paramount in any custody determination." *Id*.

"When the trial court makes no specific findings of fact . . . we must review the record to determine where the preponderance of the evidence lies." *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002) (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)). In this case, contrary to Mother's argument, the trial court did make sufficient findings of fact, and we must affirm unless the evidence preponderates against those findings. *Willcutts v. Willcutts*, No. W2002-02636-COA-R3-CV, 2004 Tenn. App. LEXIS 151, at *16–17 (Tenn. Ct. App. Mar. 4, 2004).

Based on our review of the record below, the trial court properly considered the statutory factors listed in section 36-6-106(a) of the Tennessee Code and engaged in a comparative fitness analysis of both parents. At the hearings on April 19 and 26, 2002, the trial court heard conflicting testimony regarding the mental health of both Mother and Father. In addition, the court heard

conflicting testimony from numerous witnesses concerning both parents' fitness. Following those hearings, the court below issued a memorandum opinion regarding custody of the Children. In that opinion, the court expressly referenced Mother's proof regarding Father's depression, as well as Father's proof regarding Mother's uncooperative nature. The trial court incorporated these findings into the August 5, 2002, order, specifically referencing the April 30, 2002, memorandum opinion.

It is true that section 36-6-106(a) "does require a trial court to consider all of the listed factors which are applicable." *Burnett v. Burnett*, No. E2002-01614-COA-R3-CV, 2003 Tenn. App. LEXIS 508, at \*16 (Tenn. Ct. App. July 23, 2003). "[T]he statute *does not require* a trial court, when issuing a memorandum opinion or final judgment, to list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination." *Id.* (emphasis added).

Turning to Mother's argument concerning Father's assertion of privilege related to conversations with the social workers, the Tennessee Code provides as follows:

> The confidential relations and communications between a client and a certified master social worker, or an independent practitioner of social work holding a valid certificate or registration, as defined in this chapter, are placed upon the same basis as those provided by law between licensed psychologists, licensed psychological examiners, licensed senior psychological examiners, certified psychological assistants and client, and nothing in this chapter shall be construed to require any such privileged communication to be disclosed.

Tenn. Code. Ann. § 63-23-107(a) (2003).[8] While the trial court granted Father's motion to prevent the social workers from testifying, the court did permit Mother to testify as to statements made by Father related to his mental health. Particularly, Mother testified about statements made by Father to her personally, as well as statements made during the counseling sessions at which she was present.

Even in the face of such privilege, Mother still had a means by which she could have further developed the evidence regarding Father's mental state. Tennessee Rule of Civil Procedure 35.01 provides:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a

---

[8] "The psychologist-client privilege, Tenn. Code Ann. § 63-11-213, and social worker-client privilege, Tenn. Code Ann. § 63-23-107, are placed on the same basis as the attorney-client privilege." *Kirchner v. Mitsui & Co., Inc.*, 184 F.R.D. 124, 129 (M.D. Tenn. 1998).

suitably licensed or certified examiner or to produce for examination the person in custody or legal control. The order may be made only on motion for good cause shown and upon notice to the other person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

This rule "contains no limitation on the actions to which it applies; therefore it is available in any pending civil proceeding to which the Tennessee Rules of Civil Procedure apply." *Odom v. Odom*, No. M1999-02811-COA-R3-CV, 2001 Tenn. App. LEXIS 881, at *13–14 (Tenn. Ct. App. Dec. 5, 2001) (addressing the application of the rule in the context of a custody dispute). At the hearing on November 12, 2002, during cross-examination, Mother testified as follows:

> Q:     You've been talking about alleging that Mr. Golightly has mental problems from the beginning of this trial, right?
>
> A:     Right.
>
> Q:     But you've never made a motion to the Court for any sort of independent psychiatric or psychological examination, have you?
>
> A:     No. But I've considered it, and especially since in therapy he said he could potentially kill himself, I thought – he was put on anti-depressants. That really does worry me still.

After hearing all the testimony presented, the trial court determined that an equal custody arrangement would be in the Children's best interest. The record indicates that the trial court considered the relevant factors listed in section 36-6-106(a) of the Tennessee Code, including the mental health of the parties. "The burden is upon the appellant to show that the evidence preponderates against the judgment of the trial court." *Willcutts v. Willcutts*, No. W2002-02636-COA-R3-CV, 2004 Tenn. App. LEXIS 151, at *26 (Tenn. Ct. App. Mar. 4, 2004). The evidence in this case does not preponderate against the trial court's finding that both Father and Mother are fit parents and should be awarded equal custody.

**Conclusion**

For the foregoing reasons, we affirm the decision of the circuit court. Costs are adjudged against Appellant, Karen B. Golightly, and her surety for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE