IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 7, 2015 Session

## DOMINICK J. LEONARDO v. ASHLI LEONARDO

**Appeal from the Circuit Court for Davidson County**
**No. 11D3328     Amanda Jane McClendon, Judge**

_____

**No. M2014-00372-COA-R3-CV – Filed June 18, 2015**

_____

This case involves the trial court's post-divorce modification of a parenting plan and modification of the parents' respective child support obligations. The trial court granted Appellee/Father's petition to modify the minor child's residential parenting schedule to give Appellant/Mother and Appellee/Father equal residential parenting time with the child under Tennessee Code Annotated Section 36-6-101(a)(2)(C). After modifying the residential parenting schedule, the trial court also modified the parties' respective child support obligations. Mother appeals. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, J., joined. J. STEVEN STAFFORD, P.J., W.S., concurring in part and dissenting in part.

Christopher B. Jaeger, and Gregory D. Smith, Nashville, Tennessee, for the appellant, Ashli Leonardo.

James L. Collier, and Martin A. Kooperman, Nashville, Tennessee, for the appellee, Dominick J. Leonardo.

## OPINION

Appellee Dominick Leonardo ("Father") and Appellant Ashli Leonardo ("Mother") are the parents of one child, who was born on March 22, 2011. The parties were divorced by Final Decree of Divorce entered on March 30, 2012. In conjunction with the divorce, the trial court entered a Permanent Parenting Plan (the "March 30, 2012 Parenting Plan"). Under the March 30, 2012 Parenting Plan, Mother was named the primary residential parent, with 256 days per year with the child. Father was awarded

109 days per year with the child. Concerning transportation arrangements, the March 30, 2012 Parenting Plan provides:

> The Father will be responsible for all transportation for the minor child unless the mother moves out of Davidson County, or out of the county . . . further than 30 miles from Father's current residence.

The March 30, 2012 Parenting Plan included a child support worksheet, wherein Father's gross income was set at $7,000 per month and Mother's monthly gross income was set at $6,570.00. Based upon their respective incomes and parenting time, Father was ordered to pay mother child support in the amount of $543.70 per month.

On November 16, 2012, the trial court entered an order modifying the March 30, 2012 Parenting Plan as follows:

> 3. The parties' Permanent Parenting Plan shall be modified such that Father's Tuesday visitation shall cease and shall no longer be a part of the Permanent Parenting Plan. Father's every-other-weekend ending on Sunday evening shall be extended to Monday. As long as the child is in daycare, [Father] shall return the minor child no later than 4:00 p.m. to the daycare. Once the minor child begins Kindergarten, the [Father] shall return the child to school and his parenting time will end for that day.

The November 16, 2012 order specifically provides that "[a]ll other provisions of the parties' Permanent Parenting Plan shall remain in full force and effect."

On August 30, 2013, Father filed a petition for modification of parenting time. Therein, he alleged that, since the entry of the November 16, 2012 order, there had been a material change in circumstances such that modification of the child's residential parenting schedule was warranted. Father averred, *inter alia*, that: (1) Mother had denied Father the right to pick the child up from daycare while Mother was working; (2) without notifying Father, Mother had kept the child out of daycare on days where the child was participating in plays or other events that Father wished to attend. Father alleged that he had left work to attend the play, only to find that the child was absent when he arrived at the daycare; (3) Mother refused to allow the child to spend a day with Father's family, who were visiting from out of state; (4) Mother had moved to a residence that was "approximately ten (10) miles from the nearest interstate, in a highly congested area," thus "forc[ing] Father to make an hour and fifteen minute round trip. On some occasions, Father alleged that he made this trip three times in one week. In addition, Father asserted that Mother has refused to share in the transportation with Father "unless meeting in a neutral location benefit[ed] Mother;" (5) Mother failed to notify Father until three weeks

before her planned move that the parties would need to choose another daycare in Williamson County for the child, resulting in the child being enrolled in a daycare that is approximately 25 miles from Father's residence, i.e., twice the distance of the child's previous daycare from Father's residence; (6) Mother was cohabitating with her fiancé. In light of the foregoing averments, which Father argued constituted a material change in the child's circumstances, Father proposed a joint parenting plan, under which both parties would have the child for 182.5 days per year.

Father's August 30, 2013 petition to modify parenting time did not initially comply with Tennessee Code Annotated Section 36-6-405. As discussed further below, this statute requires that the moving party must file and serve a proposed parenting plan in a proceeding for modification of a permanent parenting plan. On October 11, 2013, Father filed a memorandum in support of his petition to modify visitation time. Father attached a proposed parenting plan form to this memorandum and served Mother with both the memorandum and the proposed parenting plan.

On October 30, 2013, the trial court granted Mother's request for extension and ordered the parties to attend and complete mediation within four weeks. Tennessee Code Annotated Section 36-6-404(c)(3) provides that, "[i]f the parties have not reached agreement on a permanent parenting plan on or before forty-five (45) days before the date set for trial, each party shall file and serve a proposed permanent parenting plan, even though the parties may continue to mediate . . . ." The court set Father's petition to modify the child's residential parenting schedule for hearing on December 13, 2013. On November 1, 2013, Mother filed her answer to Father's petition, wherein she denied that there had been a material change in circumstances to warrant modification of the child's parenting schedule. Mother also filed a counter-petition for an award of attorney's fees. Despite the fact that Mother had been served with Father's proposed parenting plan on or about October 11, 2013, Mother did not file her own proposed parenting plan as contemplated under Tennessee Code Annotated Section 36-6-404(c)(3), nor did she specifically object to Father's proposed parenting plan (other than to assert that there was no material change in circumstances to warrant modification of the child's visitation schedule). On November 12, 2013, the mediator filed a report with the trial court, indicating that, although the parties had attended and participated in mediation, the case had not settled.

The trial court, sitting without a jury, heard Father's petition for modification of the child's residential parenting schedule and Mother's counter-petition for attorney's fees on December 13th and 20th, 2013, and on January 6, 2014. During the hearing, the trial court heard evidence concerning Mother's income as it related to Mother's alleged failure to comply with the existing parenting plan. By order of February 4, 2014, the trial

court granted Father's petition to modify the parenting plan based upon the following findings:

> The Father has proven, and it was basically unrefuted, that [Mother] had moved from the Rivergate/Goodlettsville areas which was in close proximity to the home of [Father] . . . and the location of the minor child's daycare . . . where Father was able to drive by and visit with the minor child during the day. It is unrefuted that the Mother has purchased a home and lives with [her fiancé], with whom she is unmarried. That the Mother's new home is less than thirty (30) miles away is undisputed, but due to traffic, it appears to be considerably more, as much as forty-five (45) minutes one way to drive to her home, depending on the time of day and the traffic. What was hotly contested during the hearing by [Mother] was whether the [Father] had waived any objection to the current circumstances through his voluntary modification of the final divorce [decree] with [Mother] previously, twice previously. The Court finds that he had not.
>
> The [Father] urged that the Court should maximize participation with each parent with the child pursuant to Tennessee Code Annotated §36-6-106(a) and asserts that the standard for modification does not require that the change of circumstances be unanticipated. [Mother] responds that the fact that she lives with someone else is of no consequence unless harm could be shown to the minor child. The Court views that the state of law in Tennessee is such that either party should be able to pick up the minor child while the other party is working and the child is in the possession of a third party child care provider. The Court finds that the move to the new daycare was made in a rushed fashion with three (3) weeks' notice and its location interferes with [Father's] ability to visit the child at daycare as was done previously. The Court finds [Father] has proven by a preponderance of the evidence that the [Mother's] actions in choice of daycare . . . plus the change in [Wife's] living circumstances and location of her move constitutes a material change of circumstances such that it materially affects the life of the minor child, and it is in the minor child's best interests to alter the residential parenting time. This change of circumstances has been since the parties were last before the Court in November, 2012. The Father has consistently been involved in the child's life and has shared many activities with her. The child is close to the Father. The emotional and developmental needs of the child shall be served by the increased involvement of the Father. The Court does not find that the Mother has attempted to alienate the affections of the child for the Father, however, the Court does find that the Mother holds the affections of the child for the Father to be less significant than her own conveniences.

4

Based upon the foregoing findings, the trial court modified the March 20, 2012 Parenting Plan. The new Permanent Parenting Plan, entered on February 4, 2014, awards the parties equal time with the child, i.e., 182.5 days per year. In addition, the parenting plan states that, "[i]f either parent is out of town for more than 48 hours, the other parent has the right of first refusal to exercise that parenting time with the minor child." Concerning child support, the trial court set Father's gross monthly income at $7,515.00 and Mother's gross monthly income at $14,352.64. Pursuant to the child support worksheet, which was attached to the court's order, and in light of the trial court's modification of the parties' respective parenting time, the trial court ordered Mother to pay Father $319.00 per month in child support.

## II. Issues

Mother appeals. She raises four issues for review as stated in her brief:

1. Whether the trial court erred by modifying the parties' parenting plan—agreed upon less than a year earlier—without a showing of the sort of changed circumstances that would justify changing the earlier plan to a week-to-week parenting schedule.

2. Whether the trial court erred in finding that it was in the child's best interest to change from a parenting plan in which she was doing well and enjoying a good relationship with both parents to a week-to-week parenting schedule.

3. Whether the trial court erred in modifying [Father's] child support (in fact ordering [Mother] to pay child support to [Father]) in the absence of any pleading requesting child support or discovery related to child support and in the fact of [Father's] own claim in his petition that he was not seeking to modify the child support in modifying the parenting schedule.

4. Whether the trial court erred in holding that either parent could pick up and remove the parties' minor child from day care during the other's parenting time applying the novel concept of "neutral time."

## III. Standard of Review

In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. See Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). To preponderate against the trial court's

findings of fact, the evidence "must support another finding of fact with greater convincing effect." ***Austin v. Gray***, No. M2013-00708-COA-R3-CV, 2013 WL 6729799, at \*6 (Tenn. Ct. App. Dec. 18, 2013). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. ***Id***.

Regarding the standard a petitioning parent must meet to prove a material change in circumstances sufficient for consideration of whether modification of the residential co-parenting schedule is in the best interest of the child, as Father sought to prove in this case, Tennessee Code Annotated Section 36-6-101(a)(2)(C) provides:

> (C) If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.[1]

---

[1] In contrast, Tennessee Code Annotated § 36-6-101(a)(2)(B) governs the standard a petitioning parent must meet to prove a material change in circumstances sufficient to modify custody and provides, in relevant part:

> (B) If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

The 2004 statutory amendment, and specifically the addition of Subsection (a)(2)(C), establishes different criteria and a lower threshold for modification of a residential parenting schedule. However, the statutory criteria pertaining to modification of "custody"—the term used in the statute, which we equate to the designation of a "primary residential parent" and matters more substantive than a change of schedule—remained unchanged. ***Scofield v. Scofield***, No. M2006-00350-COA-R3-CV, 2007 WL 624351 (Tenn. Ct. App. Feb. 28, 2007).

A trial court's determination of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interest are factual questions. *See* **In re T.C.D**., 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); **In re C.K.G**., 173 S.W.3d 714, 732 (Tenn. 2005).

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, **Brumit v. Brumit**, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997), trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. **Massey–Holt v. Holt**, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007). Thus, determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." **Suttles v. Suttles**, 748 S.W.2d 427, 429 (Tenn. 1988) (citing **Edwards v. Edwards**, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [parenting schedule] in the hopes of achieving a more reasonable result than the trial court." **Eldridge v. Eldridge**, 42 S.W.3d 82, 88 (Tenn. 2001). A trial court's decision regarding the details of a parenting schedule should not be reversed absent an abuse of discretion. **Id**. "An abuse of discretion occurs when the trial court . . . appl[ies] an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." **Gonsewski v. Gonsewski**, 350 S.W.3d 99, 105 (Tenn. 2011). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." **Eldridge**, 42 S.W.3d at 88.

## IV. Analysis

### A. Material Change in Circumstances

In **Armbrister v. Armbrister**, 414 S.W.3d 685 (Tenn. 2013), our Supreme Court stated:

> As the Court of Appeals also has recognized, section 36-6-101(a)(2)(C) sets "'a very low threshold for establishing a material change of circumstances'" when a party seeks to modify a residential parenting schedule. **Boyer** [**v. Heimermann**], 238 S.W.3d [249,] at 257 [(Tenn. Ct. App. 1997)] (quoting **Rose v. Lashlee**, No. M2005–00361–COA–R3–CV, 2006 WL 2390980, at *2 n. 3 (Tenn. Ct. App. Aug. 18, 2006)); *see also* Marlene Eskind Moses, *Modification of Permanent Parenting Plans in*

*Tennessee*, 49 Tenn. B.J., May 2013, at 27, 28 ("The aforementioned standard [section 36-6-101(a)(2)(C)] sets what is widely known among domestic [law] practitioners as a very low threshold for establishing a material change of circumstances." (internal quotation marks omitted)). By declaring that changes relating to a child's age or a parent's living or working conditions may constitute a material change in circumstances, the General Assembly has plainly expressed its intent to permit modification of residential parenting schedules based on changes that reasonably could have been anticipated when the original residential parenting schedule was established. *Boyer*, 238 S.W.3d at 256–57.

*Armbrister*, 414 S.W.3d at 703 (footnote omitted). Among other things, the *Armbrister* holding clarified that a parent seeking modification of a residential parenting schedule in a permanent parenting plan is not required to prove that the material change of circumstances giving rise to the request was unanticipated at the time the residential parenting schedule was originally established. *Id*. The burden, however, remains "on the party seeking modification" to show, "by a preponderance of the evidence," that there has been a "material change in circumstances affecting the child's best interest." *Id.* at 705.

Here, the trial court found several changes in the child's circumstances: (1) Mother had moved from the Rivergate/Goodlettsville area, which was in close proximity to Father's home, his parents' home, and the child's daycare; (2) Mother purchased a home with her fiancé and was currently living with him; (3) although Mother's new home is less than thirty miles away from Father's home, traffic makes the drive as much as forty-five minutes each way. These findings are largely undisputed in the record. Mother testified, in relevant part, that she is living with her fiancé:

> Q [to Mother]. And since our last time in court, you have purchased a home with [your fiancé]?
> A. Correct.
> Q. And you all live together?
> A. Correct.

Father testified concerning the inconvenient location of Mother's new residence as follows:

> Q [to Father]. At the time of the divorce and the time the last order was entered, you were living in Whites Creek?
>
> A. Correct.

Q. And the mother was living where?

A. The mother was living in Rivergate, which was right by the child's day care and also by my parents, [and] the maternal grandparent. So we were all right around the eight to nine mile radius. But at that time, [Mother] was a stone's throw to the day care . . . and my parents were right across the street. It was a much more convenient situation.

\* \* \*

Q. And the mother has moved?

A. Yeah. And she's moved. And it's [sic] really no easy way to get to her place. She's out—it might as well be in Nolensville almost. But whether you take I-24 or I-65, no matter where you get off, and it's peak traffic time, it's very difficult to get to.

\* \* \*

Q. So you agree that it would make sense to cut down on the transporting back and forth?

A. Sure. Absolutely. The transportation right now, no matter how you cut it, it takes me an hour and a half, if not longer, to get to [Mother's] house and back. And, of course, [the child's] in the car the entire time. . . . It's a lot of back and forth for her, no doubt about it, and it is for me as well.

The record indicates that Father does most, if not all, of the transportation for his visitation, and we glean from the testimony that Mother has been somewhat less than congenial in offering to meet Father at locations closer to his home or work to exchange the child. From the totality of the circumstances, and especially in light of Mother's new living situation and the changes in transportation that her move has brought, we conclude that the evidence does not preponderate against the trial court's finding that there have been material changes in circumstances sufficient to warrant modification of the child's residential parenting schedule pursuant to Tennessee Code Annotated Section 36-6-101(a)(2)(C).

## B. Best Interest

Our conclusion that the proof supports the trial court's finding of a material change in circumstances answers only the threshold question in this modification

9

proceeding. It does not predetermine the outcome of the case. ***Boyer***, 238 S.W.3d at 260. The second step of the court's analysis entails a determination of the child's best interest, using the factors in set out in Tennessee Code Annotated Section 36-6-106(a). *See* Tenn. Code Ann. §§ 36-6-101(a)(2)(C) and 36-6-401(a) ("In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities.").

Concerning the child's best interest, in its February 4, 2014 order, the trial court found that: (1) the Father has consistently been involved in the child's life and has shared many activities with [the child]; (2) the child is close to the Father; (3) the emotional and developmental needs of the child shall be served by the increased involvement of the Father. The trial court's order goes on to state that "[t]he Court does not find that Mother has attempted to alienate the affections of the child for the Father, however, the Court does find that Mother holds the affections of the child for the Father to be less significant than her own conveniences." In making these findings, the trial court clearly considered the following statutory factors:

> (1) The strength, nature, and stability of the child's relationship with each parent . . .
> (2) Each parent's . . . past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents . . . to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent . . . to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent . . . denying parenting time to either parent in violation of a court order.

> \*     \*     \*

> (6) The love, affections, and emotional ties existing between each parent and child.

> \*     \*     \*

> (10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment.

10

After reviewing the record, there is no doubt that both of these parents love their child. There is no question that the child is happy and well cared for in both households. The record, however, indicates that Mother has, on several occasions, failed to properly notify Father when Mother kept the child home from school. The fact that these occasions usually fell on days when the child was scheduled to participate in school activities that Father was planning to attend and the fact that, in the absence of any notice from Mother, Father would show up only to find that the child was not at school, gives rise to a reasonable inference that Mother's failure to notify Father was intentional and done for the sole purpose of causing him inconvenience. Concerning the lack of notice, Mother testified that she "attempted" to contact Father, or that she "forgot" to contact Father, or that the child was sick or had been hurt at school; however, from the trial court's finding, *supra*, it is clear that it did not give credence to Mother's testimony in this regard. When the resolution of an issue in a case depends on the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See* **Whitaker v. Whitaker**, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997); **McCaleb v. Saturn Corp**., 910 S.W.2d 412, 415 (Tenn. 1995). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See* **Whitaker**, 957 S.W.2d at 837; **McCaleb**, 910 S.W.2d at 415; **Walton v. Young**, 950 S.W.2d 956, 959 (Tenn. 1997).

From our review of the record, we conclude that the trial court properly considered the appropriate statutory factors, as well as the General Assembly's recognition of "the fundamental importance of the parent-child relationship to the welfare of the child" and its declaration that "the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests." Tenn. Code Ann. § 36-6-401(a). Upon evaluating all of the relevant factors, the trial court concluded that modifying the residential parenting schedule was in the child's best interest. The evidence does not preponderate against this finding.

### C. Pickup at Daycare

In its February 4, 2014 order, the trial court stated its belief that "the state of law in Tennessee is such that either party should be able to pick up the minor child while the other party is working and the child is in the possession of a third party child care provider." Mother argues that this finding is "unsupported by any statute or case law: it is not the law in Tennessee, nor should it be." Although the parties refer to the time when the child is either in daycare, or in the care of a third party, as "neutral time," we find no such term in our jurisprudence, nor do we adopt that term here. However, Tennessee Code Annotated Section 36-6-106(a) states that, "in taking into account the child's best

interest, the court **shall** order a custody arrangement that permits both parents to enjoy the maximum **participation** possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10) [i.e., the best interest factors], the location of the residences of the parents, the child's need for stability and all other relevant factors." *Id*. § 36-6-106(a) (emphases added).

At the time of the trial, the parties' child was in daycare. Mother argued that it was best for the child to have a set schedule and for the Father not to visit or remove her from daycare when his schedule allowed. Father agreed that when the child started kindergarten, she would need to remain at the school during school hours, but given his schedule and the increased distance between his home and Mother's new home, he would visit with the child at daycare whenever he could. The trial court agreed that this would foster the relationship between the Father and the child and that the child's need for stability was not undermined by Father's occasional visits to the daycare. Under Tennessee Code Annotated Section 36-6-106(a), and from the totality of the circumstances, we conclude that the trial court did not err in allowing Father to visit the child while she is in daycare or with a third party caregiver. This is especially true in light of Mother's less than cooperative attitude in informing Father of the child's daycare attendance and schedule, *see* discussion *supra*.

### D. Child Support

In his petition for modification of parenting time, Father states that he

> is not asking for more time in an effort to lower his child support. To the contrary, the Father is not requesting a modification of child support and is willing to leave child support unchanged if he is allowed more time with the parties' minor child.

In the first instance, child support belongs to the child and is mandated in the State of Tennessee to be in compliance with the guidelines. *Blankenship v. Cox*, No. M2013-00807-COA-R3-CV, 2014 WL 1572706 (Tenn. Ct. App. April 17, 2014). Accordingly, Father could not waive child support that rightfully belongs to the child. The determination of the amount of child support is within the sole purview of the court and is subject to the statutory requirements as well as those requirements set out in the Tennessee Child Support Guidelines.

Mother argues on appeal that the trial court erred in "sua sponte" modifying child support after modifying the parties' respective parenting time. Mother cites Tennessee

Code Annotated Section 36-5-101(f)(1), which states, in pertinent part, that "[a]ny order for child support shall be a judgment entitled to enforcement . . . . Such judgment shall not be subject to modification as to any time period or any amounts due prior to the date that an action for modification is filed" and argues that the trial court had no authority to modify child support unless and until one of the parties filed a petition for modification of child support. In several cases, we have held that the trial court had no authority to modify child support in the absence of some petition for modification. *See, e.g.,* **S.A.M.D. v. J.P.S.,** No. W2013-00314-COA-R3-CV, 2013 WL 5447392 (Tenn. Ct. App. Sept. 30, 2013, *perm. app. denied* (Tenn. Feb. 11, 2014) (reversing the trial court's modification of child support when the only petition filed was one for contempt); **Everett v. Morgan**, No. E2007-01491-COA-R3-CV, 2009 WL 113262 (Tenn. Ct. App. Jan. 16, 2009) (holding that the trial court erred in modifying child support upon a Tennessee Rule of Civil Procedure 60 motion); **Long v. Long**, No. 01A01-9406-CV-00270, 1995 WL 33741 (Tenn. Ct. App. Jan. 27, 1995) (denying modification of child support on a contempt petition). Importantly, Tennessee Code Annotated Section 36-5-101(f)(1) requires only that a party file an "action for modification" in order to trigger review of child support. In other words, the statute does not specify that such "action for modification" must be an action for modification **of child support**. Rather, from its plain language, the primary goal of Section 36-5-101(f)(1) appears to be two-fold. First, the statute prevents retroactive modification of child support. *See* **Rutledge v. Barrett**, 802 S.W.2d 604, 606 (Tenn.1991); **Purdy v. Smith**, No. M2012–02463–COA–R3–CV, 2014 WL 2194451, at *5 (Tenn. Ct. App. May 23, 2014) (citing **In re Christopher A.D.**, No. M2010–01385–COA–R3–JV, 2012 WL 5873571, at *4 (Tenn. Ct. App. Nov. 20, 2012)). Second, the statute ensures that the responding party has "notice of the action" for modification. Tenn. Code Ann. §36-5-101(f)(1). Here, we are faced with the question of whether Father's petition to modify the child's visitation schedule also requires the trial court to revisit the question of child support, or whether, as Mother contends, the fact that Father did not specifically petition for modification of child support, precludes the trial from addressing that issue under Tennessee Code Annotated Section 36-5-101(f)(1). For the following reasons, we conclude that a petition to modify visitation time or the primary residential parent necessitates a recalculation of child support so long as the opposing party received adequate notice of the petition and so long as there is a significant variance in accordance with the Tennessee Child Support Guidelines.

Tennessee Code Annotated Section 36-6-405 specifically addresses "modifying permanent parenting plans." The statute provides that, "[i]n a proceeding for a **modification of a permanent parenting plan**, a proposed parenting plan **shall** be filed and served with the petition for modification and with the response to the petition for modification." *Id*. (emphases added). Here, Father filed the required proposed parenting plan on October 11, 2013. The proposed parenting plan contemplated under the foregoing statute is discussed at Section 36-6-404(d), which states that the Administrative

13

Office of the Courts ("AOC") "shall develop a 'parenting plan' form that **shall** be used . . . by each court . . . that approves parenting plans." *Id*. (Emphasis added). Likewise, Section 36-6-402(3) defines a "permanent parenting plan," in relevant part, to mean "a written plan . . . including the allocation of parenting responsibilities and the establishment of a residential schedule, **as well as an award of child support**." *Id*. (emphasis added). The AOC's website, under the heading "Forms," contains the required Parenting Plan Form. Section III of that form is titled "Financial Support" and provides, in pertinent part:

> **A. CHILD SUPPORT**
> Father's gross monthly income is $_____.
> Mother's gross monthly income is $_____.
>
> 1.  The final child support order is as follows:
> a.  The __ mother __ father shall pay to the other parent as regular child support the sum of $_____ __weekly ___monthly . . . . **The Child Support Worksheet shall be attached to this Order as an Exhibit.**

(Emphases in original).

As set out above, once the trial court enters a parenting plan, it must also enter a child support worksheet, i.e., "[t] Child Support Worksheet **shall be attached to this Order as an Exhibit**." *Id*. (emphasis added). Based upon: (1) the requirement that a proposed parenting plan form must be filed with a petition for modification of a permanent parenting plan; (2) the fact that the proposed form requires disclosure of the parties' incomes; (3) the plan requires disclosure of a proposed child support amount; and (4) the fact that the trial court is required to include a child support worksheet with its parenting plan, we conclude that the filing of a petition to modify child visitation and/or the child's residential parenting schedule triggers a review of the parents' respective child support obligations. This holding is in line with cases such as *Schreue v. Garner*, No. M2010-00369-COA-R3-CV, 2011 WL 2464180, at *6 (Tenn. Ct. App. June 20, 2011). In *Schreue*, this Court affirmed the trial court's modification of child support where the petition filed was not a petition for modification of child support, but was a petition to alter the residential parenting time. While the opposing parent in *Schreue* did not rely on Tennessee Code Annotated Section 36-5-101(f)(1) for the proposition that a trial court cannot revisit child support unless and until one of the parties files a petition specifically requesting modification of child support, the holding in *Schreue* is unequivocal that a change in residential parenting time triggers modification of child support. *Id*.; *see also Joiner v. Griffith*, No. M2004-02601-COA-R3-CV, 2006 WL 2135441 (Tenn. Ct. App. July 31, 2006) ("The modification of custody and significant change in the visitation schedule necessitate a modification of child support."). While a petition to modify

visitation or the primary residential parent may necessitate recalculatation of child support, the court must ensure that the opposing party receives proper notice so as to satisfy Tennessee Code Annotated Section 36-5-101(f)(1).

As discussed above, on October 11, 2013, approximately two months prior to trial, Father filed a memorandum of law in support of his petition to modify visitation. Father attached a proposed parenting plan, as contemplated under Tennessee Code Annotated Section 36-6-405 ("[A] proposed parenting plan shall be filed and served with a petition for modification). In section 3 of the proposed plan, Father included his monthly income of $7,000 and what Father thought at the time was Mother's income of $6,570 per month.[2] In addition, the proposed parenting plan form included an amount for child support to be paid by Father, i.e., $1,106.00 per month; however, the petition did not include a child support worksheet. Although she was served with Father's proposed parenting plan, prior to the December 2013 trial on Father's petition to modify, Mother lodged no objection regarding modification of child support. After the trial court rendered its opinion in January 2014, wherein it modified the parenting time, the court instructed the parties to try to resolve the issue of the child support amount. Tenn. Code Ann. §36-6-404(c)(2) ("If the parties cannot reach agreement on a permanent parenting plan, upon the motion of either party, or upon its own motion, the court may order appropriate dispute resolution proceedings"). If the parties could not agree, the court stated that they could come back before the court with competing parenting plans. Tenn. Code Ann. §36-6-404(c)(3) ("If the parties have not reached agreement on a permanent parenting plan on or before forty-five (45) days before the date set for trial, each party shall file and serve a proposed permanent parenting plan, even though the parties may continue to mediate or negotiate."). The court further suggested that it might need some testimony on the issue of the parties' respective incomes. Although we concede that Father's petition for modification of the parenting plan and supporting memorandum neglected to include a child support worksheet, his filings otherwise complied with the foregoing mandates, i.e., he included a completed AOC parenting plan form that was served on Mother more than 45 days before the hearing. Regardless, Mother's answer merely denies that there had been a material change in circumstances so as to trigger modification of the parenting plan. In other words, although the trial court instructed the parties to tender competing proposed parenting plans (which would include proposed child support amounts under Section 3) if the parties could not agree, Tenn. Code Ann. § 36-6-404(c)(3), Mother did not file a competing proposed parenting plan form. Tennessee Code Annotated Section 36-6-404(c)(3) further provides that, "[f]ailure to comply by a party [i.e., failure to file a competing proposed parenting plan] may result in the court's adoption of the plan filed by the opposing party." Based upon the foregoing

---

[2] Based upon Father's disclosure of Mother's income, i.e., $6.570 per month, it is clear that he was not aware, at the time he filed his petition (and attempted to waive a modification of his child support obligation), that Mother's income had increased significantly to approximately $14,000 per month.

authority, and in light of Father's timely submission of a parenting plan form, we conclude that Mother had notice that a modification of child support was possible (and, in fact, was the trial court's duty to establish upon modification of parenting time). The sole question remaining is whether there was a significant variance to warrant modification of child support in this case.

Tennessee Code Annotated Section 36-5-101(g)(1) provides that "the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e)." Likewise, Tennessee Child Support Guidelines Rule 1240-2-4-.05(6) provides that "[a]n order [on child support] may be modified to reflect . . . a parenting time adjustment, and work-related childcare only upon compliance with the significant variance requirement specified in 1240-2-4-.05." Concerning what constitutes a significant variance, Rule 1240-2-4-.05(2)(c) provides that:

> For all orders that were established or modified January 18, 2005 or after, under the income shares guidelines, a significant variance is defined as at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order . . . .

"Upon a demonstration of a significant variance, the tribunal **shall** increase or decrease the support order as appropriate in accordance with these Guidelines...." Tenn. Comp. R. & Regs. 1240-2-4-.05(5) (emphasis added).

The trial court's February 4, 2014 order contains the required AOC parenting plan form. Therein, the trial court set Father's gross monthly income at $7,515.00 per month, and it set Mother's gross monthly income at $14,352.64. As required, the order also contains a child support worksheet, wherein the trial court set Mother's child support obligation at $319.00 per month. The child support worksheet clearly shows that the required 15% variance is established in this case. While it is unclear from the record whether the trial court held an evidentiary hearing on the parties' respective incomes, it does not appear that either party asked for a hearing. Furthermore, as noted above, Mother never filed a competing parenting plan so as to raise a question of fact concerning the incomes disclosed at the hearing and on Father's proposed parenting plan form. Nonetheless, after modifying the parenting schedule, the trial court also determined that Mother's gross income had significantly increased, i.e., from $6,570 per month to $14,352.64, while Father's gross monthly income had only slightly increased, i.e., from $7000 per month to $7,515. These amounts appear to be undisputed in the record.

Having affirmed the trial court's modification of the child's residential parenting schedule, we conclude that, pursuant to the Tennessee Child Support Guidelines and the

foregoing authority, the change in parenting time and the change in the parties' respective gross incomes clearly triggered the trial court's obligation to revisit the issue of child support. *Schreue*, 2011 WL 2464180 at *6. Here, Mother was on notice that the issue of modification of child support was before the court based upon Father's petition to modify visitation and the income disclosures contained in the attached proposed parenting form. Mother never filed a competing proposed parenting form. The incomes assigned to the parties are supported by the record. Mother's increased income satisfies the significant variance criterion contained in the guidelines and, therefore, necessitates modification of her support obligation. We have reviewed the child support worksheet and conclude that it complies with the mandates of the Tennessee Child Support Guidelines; accordingly, we affirm the trial court's modification of child support.

## V. Conclusion

For the foregoing reasons, we affirm the order of the trial court. We remand the case for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Ashli Leonardo and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE

17