IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 16, 2016 Session

## TASHA DAYHOFF v. JOSHUA D. CATHEY

**Direct Appeal from the Juvenile Court for Madison County**
**No. 442403     Christy R. Little, Judge**

---

**No. W2016-00377-COA-R3-JV – Filed August 25, 2016**

---

This is the second appeal in this custody dispute between unmarried parents. After establishing parentage of the minor children, the juvenile court entered a permanent parenting plan without hearing sworn testimony. On appeal, this Court vacated the parenting plan and remanded for an evidentiary hearing. Before the hearing on remand, the mother relocated from West Tennessee to Middle Tennessee with the children. The trial court conducted an evidentiary hearing and determined that the parental relocation statute applied to the court's decision. The trial court first found that the mother's move had no reasonable purpose and was vindictive and then concluded that it is in the children's best interest for the father to be designated primary residential parent. The mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Michael A. Carter, Milan, Tennessee, for the appellant, Tasha Dayhoff.

Harold E. Dorsey, Alamo, Tennessee, for the appellee, Joshua D. Cathey.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Tasha Dayhoff ("Mother") and Joshua Cathey ("Father") lived together in Jackson, Tennessee, for about a year. They had a daughter in December 2007. Mother asked Father to move out of the home when the child was about two months old. The parties subsequently attempted reconciliation and had a son who was born in March

2009. However, the parties' attempt at reconciliation was ultimately unsuccessful. Although no court order was in place, Father had signed the birth certificates for both children, and they were given the hyphenated last name Dayhoff-Cathey. After the parties' separation, Father exercised parenting time with the children regularly. By his estimation, he saw the children about 150 days per year in 2009 and 2010. According to Mother, he had the children "about one-third" of the year.

In March 2011, the State of Tennessee filed a petition to set child support on behalf of Mother in the juvenile court of Madison County. Mother then retained counsel and filed a complaint to establish parentage. Mother also sought the entry of a permanent parenting plan and child support order. Father filed an answer admitting Mother's allegation that he is the biological father of the children and asked the court to adopt his proposed parenting plan.

On July 19, 2011, the juvenile court held a hearing on the complaint to establish parentage and considered the proposed parenting plans. The court declared Father to be the children's biological and legal father and adopted a permanent parenting plan designating Mother as the children's primary residential parent. Father timely filed a notice of appeal. On appeal, this Court affirmed the trial court's ruling that Father is the legal and biological parent of the children because that issue was not in dispute at trial or on appeal. *Dayhoff v. Cathey*, No. W2011-02498-COA-R3-JV, 2012 WL 5378090, at *3 (Tenn. Ct. App. Nov. 1, 2012). However, regarding all other issues, the hearing transcript revealed that the parties and their attorneys simply presented the facts to the trial judge without sworn testimony. *Id.* In the absence of testimonial evidence, stipulations, or properly introduced documentary evidence, we found no evidence from which the trial court could have made its ruling on the remaining issues. *Id.* Consequently, we vacated the judgment of the trial court and remanded for the trial court to conduct an evidentiary hearing with sworn testimony prior to entering a permanent parenting plan and setting Father's child support obligation. *Id.*

Three months after this Court's decision in *Dayhoff I*, in February 2013, Father filed a motion in the trial court seeking equal parenting time with the children. He alleged that he had moved and was residing only three miles from Mother's residence. Accordingly, he proposed that each parent have 182.5 days of parenting time with the children.

In May 2013, Mother sent Father a notice of her intent to relocate with the children to "the Nashville/Mt Juliet, TN area." The letter informed Father that Mother had accepted "an opportunity for advancement" with her employer effective April 14, 2013. In June 2013, Father filed a petition opposing Mother's move and asserting that her relocation had no reasonable purpose and was intended to defeat his visitation rights. Father also asserted that relocation was not in the children's best interest and that he should be designated primary residential parent.

Unbeknownst to Father, Mother moved to Dickson, Tennessee, with the children in July 2013. Mother and the children moved in with Mother's boyfriend, whom she met

six months earlier, and they resided with Mother's boyfriend's mother in her home. Thereafter, Mother met Father at an exit along the interstate to exchange the children for his weekend parenting time and did not provide him with her address or inform him that she had moved to Dickson rather than Mount Juliet or Nashville. Mother enrolled the parties' daughter in kindergarten in Dickson in September 2013, "a few weeks late," and did not inform Father where she was attending school. Mother did not provide Father's information on the school enrollment forms and listed her boyfriend as the emergency contact instead. Father filed a motion in November 2013 requesting an earlier hearing date due to the fact that Mother had moved and refused to give him the children's new address.

The litigation remained pending for the next year with no progress that is apparent from the record on appeal. On February 18, 2015, the parties and their attorneys attended mediation and resolved some of their issues by agreement. They agreed to a temporary parenting plan pending the final hearing and the amount of Father's child support obligation. An order was entered reflecting the parties' agreement as to these issues.

The evidentiary hearing was finally held on April 28, 2015. The trial court heard testimony from Mother, Father, and three other witnesses. The trial court issued a letter ruling in July 2015. The court determined that the parental relocation statute, Tenn. Code Ann. § 36-6-108, applied to the court's analysis. The court determined that Mother was spending at least sixty percent of the time with the children prior to her relocation. As a result, the court applied subsection (d) of the relocation statute, which provides:

> The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
>
> > (A) The relocation does not have a reasonable purpose;
> > (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
> > (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d)(1). The trial court found that two of the circumstances listed in subsection (d) applied: Mother's relocation did not have a reasonable purpose *and* it was for vindictive reasons intended to thwart Father's visitation. The relocation statute provides:

> If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child. If the court finds it is not in the

3

best interests of the child to relocate as defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall consider all relevant factors including those factors found in § 36-6-106(a)(1)-(15).

Tenn. Code Ann. § 36-6-108(e). Accordingly, the trial court conducted a best interest analysis and concluded that Mother should be required to return the children to Jackson to spend the rest of the summer break with Father, with Mother having weekend visitation with the children. The court's letter ruling stated, "The court will allow mother time to decide her intentions as to her residence." It stated that if Mother moved back to Jackson within 50 miles of Father, both parents could have time with the children under a mediated amended parenting plan. On August 26, 2015, the trial court entered an order tracking the language of the court's letter ruling.

Mother retained new counsel and filed a "Motion to Alter or Amend and for Final Judgment and Notice of Mother's Intention not to Relocate within 50 Miles of Father's Residence." Because the trial court's letter ruling had allowed Mother time to decide her intention with regard to her residence, Mother formally informed the court that she did not intend to relocate closer to Father. As such, Mother asked the trial court to enter a final judgment. Among other things, Mother also argued that the trial court's order should be altered or amended because the parental relocation statute is inapplicable to an initial custody determination.

After a hearing, the trial court entered an order on February 9, 2016, granting Mother's motion in part and denying it in part. Specifically, the trial court entered a permanent parenting plan resolving the outstanding parenting issues and designating Father as primary residential parent. Mother was granted parenting time with the children every other weekend, on specified holidays, and for four weeks during the summer. The trial court again held that the relocation statute was applicable to this case.

Mother filed a notice of appeal. This Court initially determined that the orders appealed were not final due to noncompliance with Tennessee Rule of Civil Procedure 58. We entered a show cause order directing the appellant to obtain the entry of a final judgment or show cause why the appeal should not be dismissed. The trial court entered another order and permanent parenting plan and also entered amended orders that complied with Rule 58. The orders appealed are now final and appealable.[1]

## II. ISSUES PRESENTED

The issues on appeal, as we perceive them, are:

---

[1] In a footnote in Mother's brief on appeal, she suggests that the trial court's March 17, 2016 parenting plan order was void because it was entered after the notice of appeal was filed. We disagree, however, because the previous orders entered by the trial court were not final due to noncompliance with Rule 58. This Court did not acquire jurisdiction until the trial court entered a final, appealable order.

4

1.      Whether the trial court erred in applying the parental relocation statute instead of the general custody and visitation statute, resulting in prejudice to Mother and effectively punishing her for relocating;

2.      Whether the trial court's best interest analysis was flawed because the trial court referenced eleven factors instead of fifteen, it failed to specifically address all factors, and it made findings that were unsupported by the evidence.

For the following reasons, we affirm the decision of the juvenile court and remand for further proceedings.

### III. STANDARD OF REVIEW

The Tennessee Supreme Court recently described the standard of review that applies when an appellate court reviews a trial court's decision on a parenting arrangement:

In a non-jury case such as this one, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Armbrister v. Armbrister,* 414 S.W.3d 685, 692 (Tenn. 2013). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Armbrister v. Armbrister,* 414 S.W.3d at 692.

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Armbrister v. Armbrister,* 414 S.W.3d at 693. Determining the details of parenting plans is "peculiarly within the broad discretion of the trial judge." *Armbrister v. Armbrister,* 414 S.W.3d at 693 (quoting *Edwards v. Edwards,* 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). "It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court." *Armbrister v. Armbrister,* 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge,* 42 S.W.3d 82, 88 (Tenn. 2001)).

5

A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion. *Armbrister v. Armbrister,* 414 S.W.3d at 693 (citing *Eldridge v. Eldridge,* 42 S.W.3d at 88). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Banks,* 271 S.W.3d 90, 116 (Tenn. 2008) (citing *Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn. 2008)). A trial court abuses its discretion in establishing a residential parenting schedule "only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Armbrister v. Armbrister,* 414 S.W.3d at 693 (quoting *Eldridge v. Eldridge,* 42 S.W.3d at 88).

*Kelly v. Kelly*, 445 S.W.3d. 685, 691-92 (Tenn. 2014).

## IV. DISCUSSION

First, we consider Mother's argument regarding the applicability of the parental relocation statute. As explained above, the juvenile court's initial permanent parenting plan was vacated by this Court in *Dayhoff I* due to the fact that the trial court failed to conduct an evidentiary hearing prior to its entry. As a result, on remand, the trial court was required to conduct an evidentiary hearing and make an initial custody determination. This Court has repeatedly held that the parental relocation statute is inapplicable when the trial court is making an initial custody decision or parenting arrangement for the child even if a parent is relocating. *See Graham v. Vaughn,* No. M2012-01982-COA-R3-CV, 2014 WL 356975, at *2 (Tenn. Ct. App. Jan. 30, 2014); *Pandey v. Shrivastava,* No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *3 n.3 (Tenn. Ct. App. Feb. 22, 2013); *Sikora ex rel. Mook v. Mook,* 397 S.W.3d 137, 149 (Tenn. Ct. App. 2012); *Nasgovitz v. Nasgovitz,* No. M2010-02606-COA-R3-CV, 2012 WL 2445076, at *5-7 (Tenn. Ct. App. June 27, 2012); *Rudd v. Rudd,* No. W2009-00251-COA-R3-CV, 2009 WL 4642582, at *5-6 (Tenn. Ct. App. Dec. 9, 2009); *Gregory v. Gregory,* No. W2002-01049-COA-R3-CV, 2003 WL 21729431, at *2-5 (Tenn. Ct. App. July 14, 2003). Accordingly, the trial court erred in concluding that the parental relocation statute was applicable to its decision. However, this does not end the inquiry.

When making an initial custody determination, a trial court is required to decide what is in the child's best interest as required by Tennessee Code Annotated section 36-6-106. *See Nasgovitz*, 2012 WL 2445076, at *5; *Rudd*, 2009 WL 4642582, at *6. Specifically, Tennessee Code Annotated section 36-6-106 provides that in any

proceeding requiring the court to make a custody determination regarding a minor child, "the determination shall be made on the basis of the best interest of the child." Tenn. Code Ann. § 36-6-106(a). Likewise, the final step of the trial court's analysis under the parental relocation statute, in this case, was to consider the best interest of the child. *See* Tenn. Code Ann. § 36-6-108(e) ("If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child. If the court finds it is not in the best interests of the child to relocate as defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall consider all relevant factors including those factors found in § 36-6-106(a)(1)-(15).") After considering the grounds listed in subsection (d) of the relocation statute, the trial court's order proceeded to consider the "best interest of the child[.]" Therefore, the trial court ultimately performed the necessary best interest analysis despite its initial error in applying the relocation statute. *See In re Lukas S.-M.*, No. M2015-01367-COA-R3-JV, 2016 WL 3662202, at *4 (Tenn. Ct. App. June 30, 2016) (concluding that the trial court erred in applying the relocation statute to an initial custody determination but that it ultimately applied the correct standard in its analysis – the best interest of the child); *Graham*, 2014 WL 356975, at *2 (same); *Nasgovitz*, 2012 WL 2445076, at *5 (same).

On appeal, Mother argues that she was prejudiced by the trial court's application of the parental relocation statute because the trial court's conclusion that she relocated without a reasonable purpose and for vindictive motives "tainted its best interest analysis." Mother claims that the trial court effectively punished her for relocating. In fact, she claims that "[b]ut for the trial court's preoccupation with Mother's relocation," Mother would have been named primary residential parent. However, we discern no error in the trial court's consideration of Mother's relocation, her motives for moving, and how the move impacted the children and their relationship with Father. Even if the parental relocation statute is inapplicable, the trial court should consider a proposed relocation of a parent in the context of its best interest analysis. *Pandey*, 2013 WL 657799, at *3 n.3 (citing *Morris v. Morris*, No. W2010-00293-COA-R3-CV, 2011 WL 398044, at *9 (Tenn. Ct. App. Feb. 8, 2011); *Rudd*, 2009 WL 4642582, at *6). In addition, Tennessee Code Annotated section 36-6-106 specifically directs the court to consider the locations of the residences of the parents, the child's need for stability, each parent's willingness and ability to facilitate and encourage a close and continuing relationship between the child and the other parent, either parent's history of denying parenting time to the other parent, the child's involvement with his or her physical surroundings, school, and activities, and the length of time the child has lived in a stable and satisfactory environment. Mother's relocation directly impacted all of these factors and several others.

In its best interest analysis, the trial court found that the children loved and shared a bond with both parents, were good students, and enjoyed many activities. The court noted that the children could participate in their extracurricular activities, soccer and judo, in nearly any area. In fact, they were involved in more activities before they left Jackson and moved to Dickson in July 2013, and Mother did not enroll them in any extracurricular activities in Dickson until March 2015, one month before trial. The court recognized that Father had family and friends in Madison County and neighboring counties, and he resided with his long-time girlfriend. Mother had no family in Dickson besides her new husband, whom she married five months before trial, and his mother. Mother's family resided in Maryland. The trial court found that the children are in need of stability at home and at school and needed a visitation schedule that is exercised as ordered. The court noted Mother's stated intention to move to Hendersonville, Tennessee, as soon as she could secure financing for the purchase of another home, and she had already moved twice within the City of Dickson. The court found that Father was more stable and ran his own business with more flexible work hours. Mother worked as a regional manager for a nonprofit organization that provided services for children in crisis. She had a one-hour commute to and from work and was gone from home, on average, from 7:15 a.m. to 5:30 p.m. each day.

The trial court did not mention its findings of vindictive motives or lack of a reasonable purpose for the move within its best interest analysis. However, the trial court's factual findings regarding these issues are equally relevant to the best interest analysis. The trial court found that Mother had a home in Jackson where the children had their own rooms, and she had support from family and friends. The trial court noted that Mother moved to Dickson instead of the cities she mentioned in the notice of relocation she provided to Father. In Dickson, she moved into the home of her boyfriend and his mother, where the parties' son slept on the couch for a period, and the daughter shared a room with the boyfriend's mother. Mother admitted that her employment change was a "lateral move" in the sense that she had the same title as her job position in Jackson. She received a $2,000 annual increase in her salary but also had a long commute to work.[2] The trial court found that Mother had no valid reason to move except to be with her boyfriend. The court noted that Mother also moved a second time in Dickson without informing Father. The trial court found that "[t]he children have been moved around from house to house and school to school too often for a kindergartener and first grader,"

---

[2]The trial court found that Mother had more financial stability in Jackson than in Dickson. Mother argues that the evidence preponderates against this finding. It is difficult to determine from the record whether the move benefitted Mother financially. She testified that her annual raise of $2,000 resulted in around $200 per month in additional income. However, she also acknowledged that the cost of living in Dickson could potentially negate her raise, and she was required to drive an hour to and from her job without reimbursement for mileage. Mother failed to point to sufficient evidence in the record demonstrating that the evidence preponderates against the trial court's finding on this issue.

which reflected "poor decision making" by Mother.

As for Mother's motives, the trial court found that Mother made visitation difficult for Father before and after the move and thwarted Father's visitation for over a month after she moved. She unilaterally eliminated Father's weekend visitation on several occasions after moving to Dickson, which resulted in periods of thirty to forty days when the children did not see Father. Mother failed to advise Father where the children lived or attended school and refused to provide him with her address at either residence in Dickson. Mother put her boyfriend's name on the children's school enrollment forms in the space designated for the father and as the emergency contact. Mother denied Father's request for copies of the children's birth certificates and social security cards. She taught the children to write their last names, which were legally hyphenated, without including Father's last name. She acknowledged that the children now "go by" Dayhoff instead of their hyphenated name, as the children's report cards confirmed. Mother took the children on two trips to Maryland and refused to provide Father with any type of itinerary or emergency telephone number where they could be reached, even though Father did not know where Mother's family lived in Maryland or have their telephone number. Mother's behavior is certainly relevant to an analysis of the children's best interest when fashioning a parenting arrangement between the parents. We reject Mother's argument that the trial court's best interest analysis was "tainted" inappropriately by its findings concerning her relocation.

Next, Mother argues that the trial court erred by using an outdated version of the statutory best interest factors and failing to mention some relevant factors. Tennessee Code Annotated section 36-6-106 states that, when conducting a best interest analysis, the trial court shall consider "all relevant factors, including the following, where applicable[.]" Tenn. Code Ann. § 36-6-106(a). It then lists fifteen factors for consideration. *Id.* The trial court's order mentioned its consideration of "the eleven enumerated factors" instead of fifteen. Presumably, the trial court was referencing the previous version of the parental relocation statute, which included within the statute eleven best interest factors for consideration during a best interest analysis. The hearing in this case was held in April 2015. Effective July 1, 2014, the parental relocation statute and other custody statutes were amended because the best interest factors they contained "differ[ed] slightly in their specifics." 2014 Tenn. Laws Pub. Ch. 617 (S.B. 1488). Rather than listing its own best interest factors, the parental relocation statute now directs the trial court, in its best interest analysis, to "consider all relevant factors including those factors found in § 36-6-106(a)(1)-(15)." Tenn. Code Ann. § 36-6-108(e).

The trial court's reference to "eleven enumerated factors" does not require reversal

in this case. The fact remains that the trial court conducted a best interest analysis and thoroughly discussed the considerations that led the court to designate Father as primary residential parent. Notably, Mother does not explain how the trial court's use of the eleven factors in the previous statute would produce a different result than application of the fifteen factors in the current statute. Several of the factors are identical in both versions. In our view, the result would be the same in this case regardless of which set of best interest factors the trial court applied. *See Pandey*, 2013 WL 657799, at *3 n.4 (explaining that although two statutes contained slightly different best interest factors, "[i]n most cases, the analysis and the result would be the same regardless of which set of factors is applied").

Prior to the 2014 amendment of the parental relocation statute, we held that a trial court's use of the eleven best interest factors in the relocation statute rather than the best interest factors listed in the general custody and visitation statutes did not constitute reversible error. *See Graham*, 2014 WL 356975, at *2 ("Although the trial court determined the child's best interest using the factors enumerated at Tenn. Code Ann. § 36-6-108(e) rather than those set forth in Tenn. Code Ann. § 36-6-404(b), the trial court used the correct standard—best interest of the child."); *Nasgovitz*, 2012 WL 2445076, at *7 (explaining that for an initial custody determination, the trial court should have applied the best interest of the child approach rather than the relocation statute, but "the trial court made its decision by applying the same standard, best interests of the child, even if the same exact statutory factors do not specifically apply"). We reach the same conclusion here.

Mother argues that the trial court should have recognized that she has been the primary caregiver for the children, that the children were well-adjusted in Dickson, and that children need continuity. Although continuity is an important factor in a best interest analysis, it does not trump all other considerations. *Skowronski v. Wade*, No. M2014-01501-COA-R3-CV, 2015 WL 6509296, at *8 (Tenn. Ct. App. Oct. 27, 2015) (*no perm. app. filed*). The purpose of considering continuity and the role of the primary caregiver is to provide children with as much stability and security as possible. *Id.* Accordingly, when the evidence shows that continuity does not provide a child with stability, the justification for maintaining the current arrangement diminishes. *Id.* Here, Mother removed the children from a stable and satisfactory environment in Jackson, Tennessee, and moved them to Dickson for no reasonable purpose. She moved once more after arriving in Dickson and intended to move again, to Hendersonville, in the very near future. As a result, Mother did not necessarily offer the children stability or continuity. We also recognize that the reason Father was prevented from performing a greater share of the parenting responsibilities and exercising his parental rights was due to Mother's efforts to thwart his visitation rights.

As previously noted, decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, so trial judges, having the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges. *Armbrister*, 414 S.W.3d at 693. We discern no reversible error in the trial court's decision in this case.

## V. CONCLUSION

For the aforementioned reasons, the decision of the juvenile court is hereby affirmed and remanded for further proceedings. Costs of this appeal are taxed to the appellant, Tasha Dayhoff, and her surety, for which execution may issue if necessary.


_____
BRANDON O. GIBSON, JUDGE